UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
HOWARD J. NORTON,

                  Plaintiff,

        -against-

                                     12 CV 4463 (PKC)

TOWN OF ISLIP, COUNTY OF SUFFOLK,
ALICIA S. O'CONNOR, ERIN SIDARAS,
PATRICIA A. WAITE, MICHAEL P.
WALSH, DANIEL C. ECKERT, and JASON
MISTRETTA, all individually and in their
official capacities,

                  Defendants.

--------------------------------------------------------x

## MEMORANDUM OPINION & ORDER

      Plaintiff Howard J. Norton brings this action against Defendants the Town of Islip ("the Town"); the County of Suffolk ("the County"); and Town of Islip attorneys Alicia S. O'Connor, Erin Sidaras, Patricia Waite, and Michael Walsh, and Town of Islip investigators Daniel C. Eckert and Mistretta (collectively, the "Individual Town Defendants"). The thirteen-count Second Amended Complaint alleges several theories of liability against the defendants stemming from the Town of Islip's issuance of appearance tickets to Norton in 2010 and subsequent attempts to prosecute Norton for violations of the Town's Rental Permit and Prohibited Storage laws. The Town Defendants[1] and the County have moved to dismiss the Second Amended Complaint. Norton has cross-moved for summary judgment on his claim seeking the invalidation of the Town's Rental Permit law.

---

[1]     The "Town Defendants" collectively refers to the Town of Islip and the Individual Town Defendants.

For the reasons set forth below, the Court dismisses Norton's claims pled under 42 U.S.C. § 1983 (First Amendment retaliation, malicious prosecution, Fourth Amendment violation, due process violation, and related *Monell* liability against the Town and County). Thus, the following counts are dismissed: Count 1 (First Amendment retaliation), Count 2 (malicious abuse of process), Count 4 (Fourth Amendment search), Count 5 (procedural due process), Count 6 (*Monell* liability against the Town based on malicious prosecution and malicious abuse of process), Count 8 (*Monell* liability against the County based on malicious prosecution and malicious abuse of process), Count 12 (attorneys' fees), and Count 13 (malicious prosecution).

The Court also dismisses Norton's claims pled under the federal Declaratory Judgment Act because they cannot independently support subject matter jurisdiction. Count 9 (pattern/practices of the Town), Count 10 (pattern/practices of the County) and Count 11 (invalidation of the Town Rental Code) are thus dismissed from the complaint.

Having disposed of Norton's claims pled under federal law, the Court declines to exercise supplemental jurisdiction over the remaining state law claims in the complaint. The Court thus dismisses, without prejudice, the following claims for lack of independent subject matter jurisdiction: Count 3 (malicious prosecution under New York law) and Count 7 (*respondeat superior* liability against the Town for malicious prosecution). The Court also dismisses Norton's cross-motion for summary judgment on Count 11.

I.      **BACKGROUND**

The following facts are drawn from the allegations in Norton's Second Amended Complaint ("the complaint" or "SAC"), which are assumed to be true in deciding the Defendants' Motion for Judgment on the Pleadings. *See Patel v. Contemporary Classics of*

*Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001). All reasonable inferences are drawn in favor of Norton as the non-moving party. *Id.*

### A. Parties

Norton resides in Lynbrook, New York and owns residential property in the Town of Islip. (SAC, ¶ 4). From October 2009 through June 2012, he owned a 25% interest in the property located at 204 Claywood Drive in the Town of Islip ("the Claywood Property"). (SAC, ¶¶ 4, 96). The remaining 75% interest in the Claywood Property was severally owned by his brothers. (SAC, ¶ 98).

The Town of Islip is located in Suffolk County, New York. During the time relevant to this action, the Town employed Alicia O'Connor as the Town Attorney for the Office of the Town of the Town of Islip ("Town Attorney's Office"). (SAC, ¶ 7). Also employed by the Town Attorney's Office were Erin Sidaras, Deputy Town Attorney; Patricia Waite, Assistant Town Attorney; and Michael Walsh, Assistant Town Attorney. (SAC, ¶¶ 8-10). Norton alleges that Sidaras and O'Connor were the policymakers in the Town Attorney's Office. (SAC, ¶¶ 7-8).

During the time relevant to this action, the Town's Division of Code Enforcement employed Daniel Eckert as an investigator and Jason Mistretta as senior investigator. (SAC, ¶¶ 11-12).[2]

### B. Plaintiff's Prior and Ongoing Litigation Against The Town

The present action is Norton's third against the Town of Islip in the Eastern District of New York and his fourth total. The first action, No. 98–CV–6745 ("*Norton I*") arose out of a 1997 accusatory instrument filed against Norton for the alleged use of a one-family dwelling in

---

[2] The complaint at times refers to Assistant Town Attorney Maeghan O'Keefe (SAC, ¶ 185), but she is not a named defendant in this action.

non-conformity with its last-issued certificate of occupancy. (SAC, ¶ 13). During the pendency of that criminal action, Norton commenced *Norton I* in 1998, alleging that the Town and certain Town officials deprived him of his right to a non-conforming use of the property without due process. (SAC, ¶¶ 14–17). The parties then agreed to adjourn the criminal action pending the resolution of *Norton I*. (SAC, ¶ 17). In January 2003, the Honorable Nicholas G. Garaufis found a violation of Norton's right to procedural due process and awarded declaratory relief recognizing the non-conforming use of the property. (SAC, ¶¶ 20–21). A week after entry of judgment against the Town, the Town filed a notice of appeal. (SAC, ¶¶ 22–23). Norton sought dismissal of the criminal action, but the Town opposed his motion. (SAC, ¶¶ 25–26). The State Court ultimately dismissed the criminal action on April 23, 2003. (SAC, ¶ 27). On October 9, 2003, the Second Circuit affirmed *Norton I*. (SAC, ¶ 28). The Town sought certiorari from the Supreme Court but was denied on June 14, 2004. (SAC, ¶¶ 28–30). On October 5, 2004, Judge Garaufis awarded Norton a fee award of $299,471.98 against the Town. (SAC, ¶ 31).

On July 21, 2004, Norton commenced a second action, No. 04–CV–3079 ("*Norton II*") in the Eastern District of New York against the Town, certain individual officers of the Town and the County for malicious prosecution and abuse of process under state and federal law arising out of the Town's criminal prosecution of Norton during *Norton I*. (SAC, ¶ 32). Norton moved to disqualify Sidaras or any other Town Attorney from representing the Town in *Norton II*, arguing a conflict of interest in having any Town Attorney represent the Town when Norton had named the Town Attorney and Deputy Town Attorney as defendants. (SAC, ¶ 33).[3] Sidaras remained on *Norton II*, however, because Norton's bid to disqualify her failed. (SAC, ¶¶ 36–40). On March 27, 2009, Judge Garaufis granted defendants' motion for summary judgment in

---

[3]     Sidaras was not a named defendant in *Norton II*.

part and denied it in part.  (SAC, ¶ 42).  The Town appealed to the Second Circuit, and on May 25, 2010, the Second Circuit reversed the district court's decision denying federal qualified immunity to certain individual defendants and remanding the state law, *Monell* liability, and declaratory judgment claims to the district court.  (SAC, ¶ 49).  A review of the docket sheet in *Norton II* shows that discovery is ongoing.[4]

Prior to filing *Norton II*, Norton filed three separate record demands with the Town pursuant to New York's Freedom of Information Law ("FOIL").  (SAC, ¶ 55).  A long-running dispute over the requested records and the Town's production ensued.  (SAC, ¶¶ 56–94).  During the course of the proceeding, Norton filed a motion for civil contempt against the Town and individual defendants, including Sidaras, and sanctions against the Town.  (SAC, ¶ 86).  On July 26, 2007, the Suffolk County Supreme Court denied the motion for contempt and for sanctions, and ordered the Town to produce redacted records.  (SAC, ¶ 89).  Both sides appealed.  (SAC, ¶ 90).  On February 9, 2010, the Appellate Division, Second Department reversed the lower court's 2007 decision and remitted the case to determine whether the Town had violated a 2006 order to produce and also to re-examine Norton's motion for civil contempt and sanctions. (SAC, ¶ 91).

### C.     Issuance of First Set of Appearance Tickets and First Prosecution

The present action arises from the Town's issuance of appearance tickets and accusatory instruments with respect to Norton's Claywood Property.  On February 3, 2010, the Claywood Property suffered a fire in its garage.  (SAC, ¶ 99).  Eckert, an investigator with the Town, went to the Claywood Property the same day to conduct an investigation.  (SAC, ¶ 100).   Norton alleges that the Town's practice is to have the Fire Marshal's office deploy investigators to

---

[4]     *Norton II* was re-assigned to the undersigned on April 18, 2013.

investigate violations of the Rental Permit Code and that Eckert went there "based on the belief that the Claywood Property was being used as a rental." (SAC, ¶¶ 100–01).

Eckert entered the property and conducted a search of the interior of the house, garage and curtilage. (SAC, ¶¶ 102, 104, 106). Norton alleges the search was unauthorized because Norton did not consent and Eckert had no warrant. (SAC, ¶¶ 102, 106). While at the property, Eckert spoke with Ralph Voehl and Joseph Atkins and asked them to execute an affidavit of tenancy regarding the Claywood Property. (SAC, ¶ 109). Voehl explained the terms of his lease to Eckert, but declined to execute an affidavit. (SAC, ¶¶ 109, 122).

On February 3, 2010, Eckert issued an appearance ticket to Norton for "allow[ing] and maintain[ing] the rental of the [Claywood Property] without a permit from the Town of Islip." (Town Def. Ex. D–1 at 1 ("Rental Appearance 1"); SAC, ¶ 110). After several attempts of service at the Claywood Property, Eckert mailed Rental Appearance 1 to Norton's brother in Syosset with a copy to the Claywood Property. (SAC, ¶¶ 112–16). Eckert also called the Town's Housing Bureau to see if Norton had a rental permit. (SAC, ¶ 114).

On February 17, 2010, Eckert signed an accusatory instrument for the violation alleged in Rental Appearance 1. (Town Def. Ex. D–1 at 2 ("Rental Accusatory 1"); SAC, ¶ 122). Rental Accusatory 1 charged Norton with a violation of Town Code Section 64–650, lack of a rental occupancy permit. (Rental Accusatory 1). The instrument stated that "the entire dwelling is rented by Ralph Voehl . . . and his family" and that Voehl had rented the property since approximately July 2006 and paid $1525 per month in rent. (*Id*.). Rental Accusatory 1 also noted that the alleged violation is punishable by a fine of between $750 and $2,500, imprisonment of 15 days or less, or both a fine and imprisonment. (*Id*.)

Eckert returned to the Claywood Property on February 18 and 22. (SAC, ¶ 117). On February 22, 2010, Eckert issued Norton an appearance ticket for allegedly "allow[ing] and maintain[ing] the storage of an unregistered GMC pickup truck in the driveway" of the Claywood Property, in violation of Town Code 68–420. (Town Def. Ex. D–1 at 3 ("Storage Appearance 1"); SAC, ¶ 118). Eckert mailed Storage Appearance 1 to Norton's brother in Syosset. (SAC, ¶ 121).

On March 2, 2010, Eckert signed an accusatory instrument for the violation alleged in Storage Appearance 1. (Town Def. Ex. D–1 at 4 ("Storage Accusatory 1"); SAC, ¶ 123). Storage Accusatory 1 charged Norton with a violation of Town Code Section 68–420, prohibited storage. (Storage Accusatory 1). Town Code Section 68–420 prohibits the outdoor storage of unregistered vehicles unless certain exceptions are met. (*Id*.). Storage Accusatory 1 stated that Eckert observed "the unregistered GMC pick up truck . . . in the driveway on 2/5/2010, 2/8/2010 and 2/22/2010." (*Id*.) It noted that the Claywood Property was in a Residence B Zoning District and outdoor storage was prohibited in such a district. (*Id*.) Storage Accusatory 1 provided that the alleged violation is punishable by a fine of $2000 or less, imprisonment of 15 days or less, or both fine and imprisonment." (*Id*.).

Norton alleges that Eckert knew that Norton was one of three owners of the Claywood Property, but issued the appearance tickets and accusatory instruments to Norton only. (SAC, ¶¶ 110, 120, 125).

Eckert submitted the first set of accusatory instruments (consisting of Rental Accusatory 1 and Storage Accusatory 1), as well as an affidavit attesting to service of Rental Appearance 1, to the Town Attorney's Office. (SAC, ¶¶ 126–27). The first set of accusatory instruments and the affidavit or service were subsequently filed with the State Court. (SAC, ¶ 129). Norton

alleges that the Town filed these accusatory instruments with the State Court though they were facially insufficient, taking advantage of the State Court's systemic failure to review accusatory instruments for facial insufficiency. (SAC, ¶¶ 130–34).

The State Court initially scheduled separate arraignment hearings on Rental Accusatory 1 and Storage Accusatory 1 in April and May 2010. (SAC, ¶¶ 135, 143). Norton did not appear at either of the initial hearings, nor did he appear at the adjourned hearings in June 2010. (SAC, ¶¶ 135, 143 146, 153). Norton claims that he did not receive the State Court's notices of the adjournment, but admits that his attorney was at least aware of the pending matters; his attorney sent letters to the State Court to contest its jurisdiction and spoke about the matter with Deputy Town Attorney Sidaras. (SAC, ¶¶ 142, 144–45, 146–48, 150).

On July 6, 2010, Assistant Town Attorney Waite filed two arrest warrant applications against Norton based on his failure to appear. (SAC, ¶¶ 155, 158). Walsh later requested to withdraw the pending warrant applications. (SAC, ¶ 159). Three arraignment hearings were held in September 2010, but Norton did not appear at any of them, continuing to claim that he did not receive notice. (SAC, ¶¶ 160–65). On September 15, 2010, Assistant Town Attorney Walsh made an oral application to dismiss Rental Accusatory 1 and Storage Accusatory 1, which the State Court granted. (SAC, ¶¶ 165–66).

### D. Service of Second Set of Appearance Tickets and Second Prosecution

On September 16, 2010, Eckert conferenced Norton's criminal matters with Sidaras, Walsh, and Town Senior Investigator Mistretta. (SAC, ¶ 168). Sidaras, Walsh and Mistretta instructed Eckert to write new appearance tickets based on the same code violations alleged in Rental Appearance 1 and Storage Appearance 1, and serve them on Norton at his home in Lynbrook, New York. (SAC, ¶ 169). Eckert did so on December 8, 2010. (SAC, ¶ 170; Town

Def. Ex. D–1 at 5 ("Rental Appearance 2"); Town Def. Ex. D–1 at 7 ("Storage Appearance 2")).

Sidaras instructed Eckert as to acceptable methods of service. (SAC, ¶ 172).

On September 29, Eckert issued accusatory instruments pursuant to the second set of appearance tickets. (SAC, ¶ 173; Town Def. Ex. D–1 at 6 ("Rental Accusatory 2"); Town Def. Ex. D–1 at 8 ("Storage Accusatory 2")). He also signed an affidavit attesting to his service of the second set of appearance tickets. (SAC, ¶ 174). The affidavit and the second set of accusatory instruments against Norton were then submitted to the Town Attorney's Office and subsequently filed with the State Court. (SAC, ¶¶ 176–77).

Norton alleges that Eckert issued the second set of appearance tickets and accusatory instruments against him despite Eckert, Sidaras, Walsh and Mistretta all knowing that he was one of several owners of the Claywood Property. (SAC, ¶¶ 170, 178). He also claims that he did not receive the second set of appearance tickets in the mail, and his attorney again contested the State Court's jurisdiction on the basis of improper service. (SAC, ¶¶ 175, 179).

The first arraignment pursuant to the second set of accusatory instruments was held on December 8, 2010. (SAC, ¶ 180). Norton did not appear, and the hearing was adjourned to a later date. (SAC, ¶¶ 180–81). Norton's attorney contested the adjourned date, reiterating the service defects previously raised to the Court. (SAC, ¶ 183). Sidaras then called Norton's attorney, stating that she would be seeking arrest warrants at the next hearing. (SAC, ¶ 184). Waite signed and filed two arrest warrant applications against Norton on December 29, 2010. (SAC, ¶ 188).

Norton's attorney contested the arrest warrant applications on the grounds that the accusatory instruments were facially insufficient, but noted that Norton would appear at a hearing if properly served by a summons. (SAC, ¶ 191). Norton did not appear at the first

warrant application hearings on January 12, 2011. (SAC, ¶ 192). Though Waite withdrew the arrest warrant applications, she signed and filed two new arrest warrant applications on January 24, 2010 – the third overall set of arrest warrant applications in this matter. (SAC, ¶¶ 194, 196). Norton's attorney continued to contest the arrest warrant applications. (SAC, ¶¶ 199–201).

On February 2, 2011, the State Court held a hearing on the third set of warrant applications. Norton's attorney appeared, but was not authorized to appear for arraignment on behalf of Norton. (SAC, ¶¶ 202, 205). Sidaras appeared, noting that she and Norton's attorney had a relationship from "other pending matters" concerning Norton, and argued that the arrest warrant applications could proceed. (SAC, ¶ 206). Norton's attorney contested the facial sufficiency of Rental Accusatory 2 and Storage Accusatory 2. (SAC, ¶ 207). The State Court found the second set of accusatory instruments to be legally sufficient and granted the arrest warrant applications. (SAC, ¶ 208).

Later that day, after failing to appear at over 10 hearings, Norton finally appeared in State Court. (SAC, ¶ 209). On February 2, 2011, Norton was arraigned on Rental Accusatory 2 and Storage Accusatory 2, pleading not guilty to both instruments. (SAC, ¶ 209). On April 18, 2011, Norton made timely motions to dismiss the second set of accusatory instruments based on jurisdictional defects and other grounds. (SAC, ¶ 210).

Norton alleges that he suffered pre-arraignment restraints on his liberty in the following ways: his retention of a lawyer to contest the second set of accusatory instruments, his walk through a metal detector upon entry at the State Court, and his "submission to a warrantless search of his person and effects" to gain entry to the State Court. (SAC, ¶¶ 222, 224). Norton alleges that he suffered post-arraignment restraints on his liberty in the following ways: appearance at the State Court for his arraignment on February 2, 2011; further appearances at the

State Court following his arraignment (no dates given); and a requirement under state law that he "render himself at all times amenable to the orders and processes of the State Court." (SAC, ¶¶ 221, 223).

While Norton's motions to dismiss were pending, Eckert returned to the Claywood Property on May 4, 2011, with his vehicle parked in the driveway. (SAC, ¶ 211). Norton alleges that Sidaras instructed Eckert to conduct an investigation into a prior violation on the Claywood Property. (SAC, ¶ 212). The next day, Eckert attempted to have Ralph Voehl execute another affidavit of tenancy, based on Sidaras's instruction to Eckert. (SAC, ¶ 212). Voehl refused. (SAC, ¶ 212).

On June 9, 2011, the State Court dismissed Rental Accusatory 2 and Storage Accusatory 2. (SAC, ¶¶ 215–217). The State Court found that both instruments were jurisdictionally defective for failure to contain "the necessary nonhearsay evidentiary allegations" tending to support the charges. (SAC, ¶¶ 216–17). The State Court also found that Storage Accusatory 2 failed to allege that Norton stored the unregistered motor vehicle on the property and noted that the Town ordinance did not contain any language permitting the Town to charge Norton with "allowing and maintaining outdoor storage." (SAC, ¶ 217). The Town did not appeal the dismissal of the second set of accusatory instruments. (SAC, ¶ 219).

### E. Procedural History

Norton filed notices of claim against the Town and the County arising out of the investigation and prosecution of the alleged rental and storage violations. (SAC, ¶ 227). He caused the notices of claim to be served on the Town and County on August 16, 2011. (SAC, ¶ 228). Norton filed this action, No. 12–CV–4463 ("*Norton III*") on September 6, 2012. (Dkt. 1). The Defendants do not contest the timeliness of *Norton III*.

The Town Defendants have moved for judgment on the pleadings pursuant to FRCP 12(c). The County has moved to dismiss pursuant to FRCP 12(b)(6). Norton has opposed both motions and cross-moved for summary judgment on his claim seeking the invalidation of the Town's Rental Permit Law.

The Court heard oral argument on the pending motions on January 30, 2015.

## II.   STANDARD OF REVIEW

With respect to the Town Defendants' Motion for Judgment on the Pleadings and the County's motion to dismiss, the Court reviews Norton's Second Amended Complaint under the well-established *Iqbal/Twombly* standard. *See Martin v. County of Nassau*, 692 F. Supp. 2d 282, 288 (E.D.N.Y. 2010) ("'The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim.'") (quoting *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006)). The Court thus considers whether Norton's Seconded Amended Complaint contains enough allegations of fact to state a plausible claim for relief. *Martin*, 692 F. Supp. 2d at 288 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although the Court "'must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 668 (2009)). Furthermore, "'only a complaint that states a plausible claim for relief survives a motion to dismiss,' and '[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Harris*, 572 F.3d at 72 (quoting *Iqbal*, 566 U.S. at 679).

The Town Defendants attached a number of exhibits to their motion for judgment on the pleadings and requested the Court's consideration of these materials. Generally, on a motion to dismiss or for judgment on the pleadings, the Court is constrained to the "four corners" of the complaint. *Gorfinkel v. Vayntrub*, No. 11–CV–5802, 2014 WL 4175914, at *3 (E.D.N.Y. Aug. 20, 2014) (citing *Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 71 (2d Cir. 1998)). The Court may consider documents outside of the complaint, however, if the plaintiff relied on them to frame his pleading. *Martin*, 692 F. Supp. 2d at 289 (citing *Chambers v. Time Warner, Inc*., 282 F.3d 147, 153 (2d Cir. 2002)). The Court may also take judicial notice of public documents in deciding a motion to dismiss. *Martin*, 692 F. Supp. 2d at 287 (citing *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)).

In deciding the parties' motions, the Court has considered the following exhibits, which Norton referenced and relied upon in his Second Amended Complaint: Town Defendants' Exhibit C (Plaintiff's Notice of Claim), Exhibit D–1 (Rental Appearances 1–2, Storage Ticket 1–2), Exhibit D–2 (Affidavits of Service), Exhibit D–3 (Court Notices), Exhibit D–4 (Arrest Warrants), Exhibit D–5 (Transcript of 2/2/2011 Hearing), Exhibit E (Orders Dismissing Rental Ticket 2 and Storage Ticket 2). Exhibit D–6 contains the 500-page motion record for Norton's two dismissal motions before Suffolk County State Court.

Though the complaint merely refers to Norton's filing of the Notice of Motion (SAC, ¶ 210), and does not quote from the motion papers or the motion record, the Court takes judicial notice of Exhibit D–6 because they contain public court records. The Court also takes judicial notice of Exhibit F, which contains relevant excerpts of the Town Code.[5]

---

[5]    Defendants have included in their motion papers a color copy of a photograph submitted to the State Court regarding the unregistered vehicle on Norton's property. (Town Defs. Reply Memo at ECF 15). Because the color version of this photo is not part of the public record and is

## III.    DISCUSSION

Norton brings a total of thirteen counts against the Town, County, and named individual defendants.  He asserts federal jurisdiction based on his claims under 42 U.S.C. § 1983 ("Section 1983") and related declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201. (SAC, ¶ 2).  However, because the Declaratory Judgment Act does not independently support federal jurisdiction, this Court's subject matter jurisdiction over the Defendants' motions is essentially based on Plaintiff's Section 1983 claims.  *See Chevron Corp. v. Naranjo*, 667 F.3d 232, 244–45 (2d Cir. 2012) (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671, (1950).

Norton asserts that the individual Town Defendants, Town and County are liable under Section 1983 for First Amendment retaliation, abuse of process and malicious prosecution based on their issuance of the second set of accusatory instruments and their criminal prosecution of Norton.  (*See* SAC, Counts 1, 2, 6, 8, and 13).  On the same basis, Norton also asserts state law claims for malicious prosecution against the individual Town Defendants and Town.  (*See* SAC, Counts 3 and 7).

Norton brings additional claims under Section 1983 against the Town for violations of his Fourth Amendment reasonable expectation of privacy in the Claywood Property and right to procedural due process.  (*See* SAC, Counts 4, 5).  He also seeks attorneys' fees under Section 1983.  (*See* SAC, Count 12).

---

not relied upon by Norton in framing his complaint (*see* Dkt. 59, Letter from Norton dated Feb. 4, 2015), the Court does not consider the color photo of the vehicle.  The Court, however, has considered the black-and-white version of the photo, which was part of the State Court record that Norton incorporated into his complaint.

Finally, Norton seeks declaratory relief against the Town and County pursuant to the federal Declaratory Judgment Act. He seeks declarations that the Town's actions against him resulted from ongoing Town practices that violate his rights under the federal and New York State Constitutions, that the County is also liable for the violation of Plaintiff's rights, and that the Town's Rental Code is invalid. (*See* SAC, Counts 9, 10, 11).

The Court begins by analyzing Norton's claims under Section 1983.

### A.     Voluntary Dismissal of Claims Against Defendant Waite (Count 2)

Pursuant to Norton's voluntary dismissal of his claims against Defendant Waite (*see* Pl. Opp. Memo at ECF 2), Count Two (abuse of process under 42 U.S.C. § 1983) is dismissed from Norton's Second Amended Complaint in its entirety. The dismissal of this claim also limits the basis of Norton's *Monell* claims against the Town and County (Counts 6 and 8, respectively) to malicious prosecution under Section 1983 only.

The Court also dismisses Waite from Count 3 (New York State malicious prosecution) and Count 13 (federal malicious prosecution).

### B.     First Amendment Retaliation Under 42 U.S.C. § 1983  (Count 1)

Count 1 seeks monetary damages against Defendants Sidaras, Walsh, Mistretta and Eckert for their alleged retaliation against Norton due to his exercise of his First Amendment rights. (SAC, ¶¶ 230–36). Norton alleges that they worked in concert to issue Rental Appearance 2 and Storage Appearance 2, ignoring the judicial insufficiency of the appearance tickets, because they sought to retaliate against Norton for his prior and ongoing litigation against the Town. (*Id*.). Sidaras, Walsh, Mistretta and Eckert assert various defenses, including absolute immunity for Sidaras and Walsh, probable cause supporting the appearance tickets, lack

of causation alleged, lack of allegations of Mistretta's personal involvement, and qualified immunity for all four defendants.  (Town Def. Memo at ECF 6–15).

### 1.  Defendants Sidaras and Walsh Are Immune

Because district courts "are encouraged to determine the availability of an absolute immunity defense at the earliest appropriate stage," the Court first considers whether any of the named Town Defendants are absolutely immune from liability on this claim.  *See Norton v. Town of Brookhaven*, 33 F. Supp. 3d 215, 229 (E.D.N.Y. 2014), *reconsidered on other grounds*, --- F. Supp. 3d ---, 2014 WL 4700250 (E.D.N.Y. Sept. 18, 2014) (citations omitted).  The defendants claiming immunity bear the burden of showing that the particular claimed immunity applies. *Giraldo v. Kessler*, 694 F.3d 161, 165 (2d Cir. 2012).  Here, Sidaras and Walsh claim absolute immunity based on activities performed in their prosecutorial capacities.  (Town Def. Memo at ECF 14).

Courts take a functional approach when evaluating a state prosecuting attorney's ability to invoke absolute immunity.  *Warney v. Monroe County*, 587 F.3d 113, 121 (2d Cir. 2009) (identifying prosecutorial immunity "not by the identity of the actor but by reference to the 'function' performed"); *Ying Jing Gan v. City of New York*, 996 F.2d 522, 530 (2d Cir. 1993) (noting immunity attaches to the "function performed, not on the office itself").  To establish immunity, the ultimate question is whether the prosecutors "have carried their burden of establishing that they were functioning as 'advocates' when they engaged in the challenged conduct."  *Warney*, 587 F.3d at 121 (citing *Doe v. Phillips*, 81 F.3d 1204, 1209 (2d Cir. 1996)).  Prosecutorial functions shielded by absolute immunity include conduct "preliminary to the initiation of a prosecution," such as "whether to present a case to a grand jury, whether to file an information, whether and when to prosecute, whether to dismiss an indictment against particular

defendants, which witnesses to call, and what other evidence to present." *Giraldo* 694 F.3d at

165. Immunity does not, however, protect "those acts a prosecutor performs in administration or

investigation not undertaken in preparation for judicial proceedings." *Hill v. City of New York*,

45 F.3d 653, 661 (2d Cir. 1995); *see also Hickey v. City of New York*, No. 01–CV–6506, 2002

WL 1974058, at *4 (S.D.N.Y. Aug. 26, 2002) ("the presence or absence of absolute immunity

turns on what the prosecutor is alleged to have done"). When it may not be gleaned from the

complaint whether the conduct at issue was done in an advocacy or investigatory role, "'the

availability of absolute immunity from claims based on such conduct cannot be decided as a

matter of law on a motion to dismiss.'" *Norton*, 33 F. Supp. 3d at 230 (citing *Hill*, 45 F.3d at

663)).

The Town Defendants argue that Sidaras and Walsh are immune from suit for First

Amendment retaliation based on Norton's allegation that they instructed and advised Eckert to

issue and serve new appearance tickets and accusatory instruments. (Town Def. Memo at ECF

14; Town Defs. Reply Memo at ECF 27). They also argue that such conduct does not qualify as

administrative or investigative conduct ineligible for immunity because it was connected with an

existing prosecution, or preliminary to initiating a new prosecution against Norton. (Town Defs.

Reply Memo at ECF 24). Norton, however, argues that "instructing and advising the issuance

and service" of appearance and accusatory tickets are not intimately associated with the judicial

phase of the criminal process; instead, he claims the issuance of appearance tickets are a police

function. (Pl. Opp. Memo at ECF 48, 52).[6]

---

[6]    During oral argument, Norton also argued that Town Attorneys in Islip have "dual"
functions between advocating on behalf of the People and providing legal advice to Town
investigators. Norton argued that Town Attorneys may only receive immunity when they are
advocating on behalf of the People, i.e., bringing actions in Court, citing *Hill v. City of New
York* as support for this proposition. While *Hill* does state that a district attorney functioning

Given the facts alleged in the Second Amended Complaint, the Court finds that Defendants Sidaras and Walsh's instruction and advice regarding the issuance and service of appearance tickets and accusatory instruments on Norton was preliminary to the Town's initiation of a new prosecution. Therefore, any claims premised on these actions are immune from suit. As Norton recognizes, an appearance ticket is a preliminary step to the filing of an accusatory instrument and the issuance of a court summons. (Pl. Opp. Memo at ECF 48). As such, the Town's issuances of new appearance tickets and accusatory instruments were necessary preliminary steps for the Town to initiate its second prosecution of Norton.[7] Indeed, the re-issued Rental Appearance 2 and Storage Appearance 2 and their associated accusatory instruments were not issued pursuant to a new investigation, but based on Eckert's previous investigation of the Claywood Property. (SAC, ¶¶ 170, 174). Here, then, the re-issuance and

_____

"outside his or her role as an advocate for the People" does not have immunity, it goes on to clarify the type of functions that do not enjoy immunity: "acts a prosecutor performs in administration or investigation *not undertaken in preparation for judicial proceedings*." *Id*. at 661 (emphasis added). Norton's invocation of *Hill* to exempt the provision of legal advice to Town investigators from immunity ignores the well-established principle that Town Attorneys may receive immunity for actions undertaken in preparation for judicial proceedings. *See Giraldo* 694 F.3d at 165. Thus, the Town Attorneys are not shielded from immunity simply because they advised Eckert on the issuance of the appearance tickets; the Court must consider whether such advice was "in preparation for judicial proceedings." Indeed, the Second Circuit has upheld immunity for a prosecutor who "directed others to issue summonses . . . because the issuance of summonses is part of the prosecutorial function . . ." *Santulli v. Russello*, 519 F. App'x 706, 711 (2d Cir. 2013)

[7]     During oral argument, Norton also argued that it was reasonable to infer a retaliatory motive on Defendants' part from their withdrawal of the first set of accusatory instruments and their filing of the second set. But Norton's speculation of a retaliatory motive is insufficient to defeat a claim of absolute immunity; indeed, the very concept of immunity is that the Court does not inquire into the motivations that may be at play. *See Shmueli v. City of New York,* 424 F.3d 231, 237 (2d Cir. 2005) ("Once the court determines that the challenged prosecution was not clearly beyond the prosecutor's jurisdiction, the prosecutor is shielded from liability . . . regardless of any allegations that his actions were undertaken with an improper state of mind or improper motive.").

service of the second appearance tickets and accusatory instruments are more properly considered "preparatory steps that a prosecutor takes to be an effective advocate of a *case already assembled*," not "investigative steps taken to gather evidence." *Smith v. Garretto*, 147 F.3d 91, 94 (2d Cir. 1998) (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)) (emphasis added).[8]

Defendants Sidaras and Walsh are thus dismissed from Count 1 on the basis of absolute immunity.

### 2. Plaintiff Fails to Plausibly State A Claim Against Mistretta and Eckert

To properly plead a claim for First Amendment retaliation under 42 U.S.C. § 1983, Norton must adequately allege: (1) that he has a right protected by the First Amendment; (2) that Defendants' actions were motivated or substantially caused by his exercise of that right; and (3) that Defendants' actions caused him some injury. *See Dorsett v. Cnty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013). Furthermore, because this claim arises under Section 1983, Norton must plausibly allege that each of the remaining defendants was personally involved in the retaliation against him. *See Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (citation omitted).

---

[8] Plaintiff also argues that Sidaras and Walsh are ineligible for absolute immunity because they acted as "complaining witnesses" when advising and instructing Eckert to issue the appearance tickets against Plaintiff. (Pl. Opp. Memo at ECF 53). However, advice and instruction regarding the issuance of an appearance ticket is nowhere near the functions of a complaining witness, which typically include sworn statements or testimony about facts. *See Flagler v. Trainor*, 663 F.3d 543, 548 (2d Cir. 2011) (citing *Kalina v. Fletcher*, 522 U.S. 118 (1997). And Plaintiff's complaint does not allege that Sidaras and Walsh gave any testimony or affirmations supporting Rental Appearance 2 or Storage Appearance 2. Thus, Plaintiff cannot invoke the complaining witness exception to defeat absolute immunity.

There is no dispute regarding Norton's First Amendment right to sue the Town, so the first element is established here. *See, e.g.*, *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 91 (2d Cir. 2002) ("The rights to complain to public officials and to seek administrative and judicial relief from their actions are protected by the First Amendment."). The Town Defendants contest the sufficiency of Count 1 with respect to the other elements necessary to allege First Amendment retaliation.

Count 1 fails against Mistretta because it does not plausibly state a claim. The sum total of factual allegations against Mistretta are that he was present at a meeting on Norton's criminal matters with other Town Defendants (SAC, ¶ 168), and that he knew that Norton was one of three owners of the Claywood Property (SAC, ¶¶ 171, 178). From these thin factual allegations, Norton claims that Mistretta is liable for First Amendment retaliation because Mistretta allegedly "advised and instructed" Eckert to issue the second set of appearance of tickets, "knew or recklessly disregarded" the jurisdictional insufficiency of the accusatory instruments, and *may have* desired to create a "chilling effect on Plaintiff's exercise of his First Amendment constitutional rights." (SAC, ¶¶ 232–34). Such conclusory allegations hardly establish Mistretta's personal involvement in Norton's claimed injury. Even if these allegations somehow could be construed to allege Mistretta's personal involvement, the claim against Mistretta would still not fail for not plausibly alleging causation. Norton does not allege that Mistretta was aware of Norton's litigation history with the Town, and his assertion that Mistretta sought to create a "chilling effect" on Norton's First Amendment rights is tentative at best. (SAC, ¶ 234 ("Sidaras (*and/or* Eckert, Walsh and *Mistretta*) desired their conduct to have a chilling effect") (emphasis added)). Norton has not plausibly alleged that Mistretta's actions were caused by a retaliatory intent. Thus, the Court dismisses Mistretta from Count 1.

Count 1 also fails against Eckert because it does not plausibly allege that Eckert's actions were "motivated or substantially caused by" Norton's prior and ongoing litigation against the Town. Norton's complaint admits that Eckert was sent to the Claywood Property "based upon the belief that the Claywood Property was being used as a rental," not because Eckert was seeking to find a violation to pin against Norton in retaliation for Norton's litigation. (*See* SAC, ¶ 100). Norton does not aver that Eckert participated in, or was even aware of, Norton's litigation against the Town before he went to the Claywood Property on February 3, 2010. Furthermore, Norton later contends that Eckert only issued the second set of appearance and accusatory instruments at the direction of attorneys Sidaras and Walsh (SAC, ¶¶ 169, 172–73), not because of Norton's litigation. Norton's conclusory allegation of a retaliatory motive by Eckert is not supported by the factual allegations in his complaint. Having failed to satisfy *Iqbal/Twombly*, Count 1 is dismissed with respect to Eckert.

### 3. Appearance Tickets Supported By Probable Cause

Even if Norton had stated a plausible claim against Mistretta and Eckert, the Court would still dismiss Norton's First Amendment retaliation claim because the appearance tickets against Norton were supported by probable cause.

Probable cause is an absolute defense to a "First Amendment claim that is premised on the allegation that defendants prosecuted a plaintiff out of a retaliatory motive." *Fabrikant v. French*, 691 F.3d 193, 215 (2d Cir. 2012). Where there is probable cause to arrest a plaintiff or issue a summons, the Court need not make an inquiry into the defendants' motives for doing so. *See id.* at 215 (granting summary judgment to defendants on plaintiff's claim for First Amendment retaliation because defendants had probable cause to arrest plaintiff for animal cruelty); *Espinoza v. City of New York*, No. 11–CV–2108, 2012 WL 4761565, at *5 (S.D.N.Y.

Aug. 3, 2012) (dismissing plaintiff's claim for First Amendment retaliation because police had probable cause to ticket plaintiff).  The Court assesses probable cause under the "totality of the circumstances."  *See Stansbury v. Wertman*, 721 F.3d 84, 92–93 (2d Cir. 2013); *United States v. Gagnon*, 373 F.3d 230, 236 (2d Cir. 2004) ("Probable cause exists if a law enforcement official, on the basis of the totality of the circumstances, has sufficient knowledge or reasonably trustworthy information to justify a person of reasonable caution in believing that an offense has been or is being committed by the person to be arrested.").[9]

Here, the Town Defendants argue that Norton's claim for First Amendment retaliation must be dismissed because the Town had probable cause to issue Rental Tickets 1–2 and Storage Tickets 1–2.  Norton counters that there was a lack of probable cause to charge him with Rental Tickets 1–2 and Storage Tickets 1–2.  (Pl. Opp. Memo at ECF 16).  The Court examines Norton's allegations regarding the lack of probable cause associated with each type of ticket below.

*Rental Tickets.*  Because the rental violation tickets are all tied to the violation observed by Eckert on February 3, 2010, the Court first examines the probable cause supporting Rental Ticket 1.  The Second Amended Complaint avers that on that day, Eckert went to the Claywood Property.  (SAC, ¶ 102).  The garage of the property had suffered a fire that day.  (*Id*. at ¶ 99).

---

[9]     Norton argued that the heightened probable cause standard applicable in malicious prosecution cases would also apply to his First Amendment retaliation claim.  (Pl. Opp. Memo at ECF 15) (arguing that because there was no custodial arrest, "the relevant inquiry is whether there was probable cause to believe that each of the criminal actions against Plaintiff could succeed.").  Courts in the Second Circuit, however, have applied the usual, non-heightened probable cause standard, *i.e.*, without regard to the likelihood of success, when evaluating First Amendment retaliation claims.  *See, e.g.*, *Espinoza v. City of New York*, No. 11-cv-2108, 2012 WL 4761565, at *5 (S.D.N.Y. Aug. 3, 2012) (analyzing whether defendants had "probable cause to issue summonses to plaintiff"); *Porat v. Lincoln Towers Community Ass'n*, No. 04-cv-3199, 2005 WL 646093, at *6 (S.D.N.Y. Mar. 21, 2005) ("Where the facts of a case show a good faith basis to make an arrest – or as here, where there is probable cause to issue an appearance ticket for trespass . . .").

Eckert sought to have Ralph Voehl and Joseph Atkins execute affidavits of tenancy, but they declined. (*Id*. at ¶ 109). Eckert issued Rental Ticket 1, charging Norton with letting the property without a rental occupancy permit and stating that "Ralph Voehl stated that he has rented the entire house from the owner of record Howard J. Norton since approximately July 2006 and pays $1525.00 a month in rent." (*Id*. at ¶¶ 110, 122).

Even considering these allegations in the light most favorable to Norton, the Court finds that the Town Defendants had probable cause to issue Rental Tickets 1–2. The totality of the circumstances includes Eckert's personal observations of the premises and a conversation with the long-time tenants of the Claywood Property, while at the property. Though the tenants would not execute affidavits regarding their tenancy, they provided information about the terms of their lease and the identity of their landlord.[10] Taken together, the circumstances show that Eckert had probable cause to issue Rental Ticket 1 against Norton.

Norton's attempts to refute probable cause on Rental Ticket 1 are strained, at best. Norton argues that at the instant Eckert wrote Rental Ticket 1, it was unreasonable to treat the Claywood Property as a home or residence because the fire had rendered the property

---

[10] Norton argues that Rental Accusatory 1 and 2 cannot be supported by probable cause because Eckert's inclusion of Ralph Voehl's statement "could have been based on hearsay within hearsay." (Pl. Opp. Memo at ECF 23). In making this argument, Norton proceeds under the wrong probable cause standard applicable to his First Amendment retaliation claim. (*See id*. at ECF 15 (seeking to apply the malicious prosecution standard for probable cause across Norton's claims)). The Court may take hearsay statements into account when conducting a traditional probable cause analysis. *See, e.g.*, *United States v. Parcel of Prop.*, 337 F.3d 225, 236 (2d Cir. 2003) ("there is clear authority in our circuit allowing the use of hearsay to establish probable cause."). As Norton's purported tenant who just lost his dwelling place, Ralph Voehl had little motive to lie to Eckert about the terms of his lease. The Court finds Voehl's statement to be sufficiently trustworthy to be considered for the purpose of establishing probable cause.

uninhabitable.  (Pl. Opp. Memo at ECF 16–17).  Norton goes on to assert that "even if it may be inferred that Plaintiff rented the dwelling previously, the factual allegations do not support that he was in violation at the time he was charged [3:10 pm], and Eckert could not have cause to believe so."  (Pl. Opp. Memo at ECF 18).  In other words, Norton's argument is that because the property was uninhabitable at the *exact moment* that Eckert wrote his ticket and Voehl was unable to live in the house at that *exact moment*, Eckert lacked probable cause to issue Rental Ticket 1.  Norton's argument insists on a formalism that defies common sense, as well as the totality of the circumstances test for probable cause.  As the Town Defendants point out, Norton's tenant rented the property on a monthly basis (Town Def. Reply Memo at ECF 12–13); the Second Amended Complaint does not aver that Voehl's tenancy was cancelled by the fire. Norton's contrary argument borders on being specious, and the Court rejects it.[11]

Norton also argues that Rental Ticket 1 was not supported by probable cause because it charged him for a crime that did not yet exist.  This argument is also easily dismissed.  The factual portion of Rental Ticket 1 states that that Norton "did allow and maintain the rental of the above dwelling."  (Ex. D–2 at 1).  There is no dispute that the Town's Rental Permit Law made it unlawful to rent a dwelling without a permit.  (*Id*. quoting Town Code § 68–650A).  Norton zeroes in on Eckert's use of the term "allow," which he alleges was not yet added to the statue at the time of his violation.  (Pl. Opp. Memo at ECF 18).  But Eckert's inclusion of the term "allow" appears in the factual portion of the ticket, and its absence from the code is clear from the code provision quoted in the accusatory instrument.  (*Compare* Ex. D–2 at 1 *with* Ex. D–2 at

---

[11]     As Defendants argued at the hearing, Plaintiff's "3:10 pm" argument is, indeed, a red herring.  The accusatory instrument's inclusion of date and time serves to provide Norton with fair notice of when Eckert issued Rental Ticket 1, rather than define the beginning and end of his behavior that allegedly violated the Town Code.

2).  Thus, Eckert's use of the term "allow" to describe the facts tending to support the charge against Norton does not defeat probable cause on its own.

Having found that Eckert had probable cause to issue Rental Ticket 1, it follows that the Town Defendants had probable cause to issue Rental Ticket 2, as the basis for Rental Ticket 2 remains the same as Rental Ticket 1.  Indeed, the probable cause supporting Rental Ticket 2 is even stronger than that supporting Rental Ticket 1, because the Second Amended Complaint alleges that Eckert later called the Housing Bureau to see if Norton had a rental permit.  (SAC, ¶ 114).  Thus, Norton cannot maintain a claim for First Amendment retaliation on the basis of Rental Tickets 1 or 2.  *See Porat*, 2005 WL 646093 at *6 (finding the facts as pled "establish the existence of probable cause for [the defendant-officer] to conclude that plaintiff had committed the violation of trespassing," requiring dismissal of his First Amendment retaliation claim).

*Storage Tickets.*  Because Storage Ticket 1 and Storage Ticket 2 pertain to the same set of facts, the Court begins with Storage Ticket 1.  The Second Amended Complaint avers that Eckert visited the Claywood property on multiple occasions (February 3, February 4, February 5, February 18 and February 22).  (SAC, ¶¶ 100–04, 112, 115, 117).  On February 22, 2010, Eckert issued Storage Ticket 1 for the prohibited storage of an unregistered pickup truck in the driveway of the Claywood Property. (SAC, ¶ 118).  The associated accusatory instrument stated that Eckert personally observed the unregistered vehicle in the driveway on 2/5/2010, 2/18/2010 and 2/22/2010. (SAC, ¶¶ 123–24).

The totality of the circumstances supports a finding of probable cause with respect to Storage Ticket 1.  Eckert personally observed the unregistered vehicle on three separate occasions on the Claywood Property over a period of 17 days.  Though Norton objects to Eckert's failure to specify that the vehicle lacked a registration sticker, it is reasonable to infer

that the vehicle lacked a sticker based on Eckert's statement that "the unregistered GMC pick up truck was observed in the driveway on 2/5/2010, 2/18/2010, 2/2/2010." (Ex. D–1 at 4).

Norton argues that "observation does not explain how there was probable cause to believe the GMC truck was unregistered." (Pl. Opp. Memo at ECF 19). Norton points out that Eckert failed to note the truck lacked a registration sticker. (*Id*.). Here, Norton again insists on a formalism that defies common sense. It is commonly understood that a vehicle is unregistered when it lacks a visible registration sticker. By stating that he "observed" the unregistered vehicle, Eckert gave notice that he did not see a visible registration sticker on the truck.[12] Unlike the deficient violations cited by Norton in his brief, such an observation does not depend on expertise or particularized findings. *Cf. People v. Dreyden*, 15 N.Y.3d 100, 104 (N.Y. 2010) (requiring arresting officer to "explain briefly, with reference to his training and experience, how he or she formed the belief that the object observed in defendant's possession was a gravity knife" as defined by the statue); *People v. Dumas*, 68 N.Y.2d 729, 731, 497 N.E.2d 686, 686–67 (N.Y. 1986) (noting lack of allegation that police officer was an expert in identifying marijuana or that defendant represented it as such, to support charge that defendant sold marijuana); *People v. South*, 29 Misc. 3d 92, 96 (N.Y. App. Term 2010) (noting failure to set forth defendant's blood alcohol content to support charge that she was intoxicated).[13] Probable cause, therefore, existed

---

[12]     Notably, Norton does not allege in his complaint that Eckert's observation was incorrect or that the truck had a visible registration sticker or was registered.

[13]     During oral argument, Defendants argued that property owners are strictly liable for unregistered vehicles on their property. This, however, overstates the nature of a property owner's liability. As Norton points out in his letter (Dkt. 59), while liability may attach to the owner of the premises for storing an unregistered vehicle on the property, the New York courts have limited that liability to instances where the owner "had a right of entry" to the premises, either through the lease or in a statute. *See People v. Scott*, 26 N.Y.2d 286, 289 (N.Y. 1970). Norton does not allege that he reserved such a right of entry to the premises.

to issue Storage Ticket 1, which defeats Norton's retaliation claim as to the issuance and service of that appearance ticket. Furthermore, because the facts supporting probable cause for Storage Ticket 1 are the same as for Storage Ticket 2, there can be no retaliation claim based on that appearance ticket either.

Having dismissed all Defendants from Count 1, the Court dismisses Norton's claim for First Amendment retaliation in its entirety.

### C. Malicious Prosecution Under Section 1983 (Count 13)

Count 13 seeks monetary damages against Sidaras, Walsh, O'Connor, Mistretta, and Eckert for their prosecution of Norton based on the second set of accusatory instruments. (SAC, ¶¶ 324–25). Norton's Section 1983 claim for malicious prosecution is based on the state law tort of malicious prosecution, which Norton separately alleges in Count 3. (SAC, ¶¶ 244–52). Norton alleges that the named Defendants prosecuted him "with a malicious intent to retaliate

---

Defendants also argued that under *People v. Sikorsky*, they are entitled to the presumption that a vehicle that lacks a registration sticker is unregistered. (Town Def. Reply Memo at ECF 16) (citing *People v. Sikorsky*, 759 N.Y.S.2d 836, 838 (N.Y. App. Term 2002)). Yet Defendants again overstate the law – the presumption is not simply based on the lack of sticker:

> If a vehicle does not have affixed a validating sticker which indicates the plate number, the vehicle identification number and the expiration date of the registration, the failure to produce the certificate of registration, or a photostatic copy of such certificate, shall be presumptive evidence of operating a motor vehicle or trailer which is not registered as required by this article. N.Y. Veh. & Traf. Law § 401.

In any event, neither strict liability nor the presumption of non-registration is necessary to establish probable cause for the issuance of Storage Tickets 1 and 2 as to Norton. Although, as the Court raised during oral argument, the issuance of Rental Ticket 1 could be viewed as weakening probable cause to believe that Norton, as opposed to his tenants, was storing the unregistered vehicle on the Claywood Property, the mere possibility that others may have been responsible for the vehicle does not extinguish probable cause as to Norton. Given Norton's undisputed ownership of the property, there was probable cause to believe that he and possibly others were responsible for the unregistered vehicle being on the property.

against [Norton] for his litigations against the Town and other Town [officials]. (SAC, ¶ 248). The Town Defendants assert a variety of defenses, including absolute and qualified immunity, probable cause, lack of allegations of personal involvement, lack of a cognizable deprivation of liberty, and lack of a favorable termination of the prosecution. (Town Defs. Memo at ECF 21–27).

### 1. Absolute Immunity for Walsh and O'Connor; Limited Immunity for Sidaras

The Court again begins with the Town Defendants' defense of absolute immunity, and examines whether Sidaras, Walsh, and O'Connor are immune from suit for malicious prosecution. Thus, the Court considers whether the three attorneys are alleged to have been performing prosecutorial duties or investigative functions. *See* Section III.B.1, *supra*.

Norton's malicious prosecution counts allege that Sidaras, Walsh and O'Connor "initiated and/or continued the investigations of Plaintiff and/or ordered or helped others to perform unlawful acts." (SAC, ¶ 244; *see also* SAC, ¶ 247). However, Norton has not alleged facts supporting the notion that Sidaras, Walsh and O'Connor played a role in the *investigation* of Rental Tickets 1–2 or Storage Tickets 1–2, which Eckert conducted in February 2011 during his visits to the Claywood Property. Nor does the Second Amended Complaint allege that Eckert's visits to the Claywood Property in February 2011 were at their direction or advice. (SAC, ¶¶ 99–118).[14] Thus, these conclusory allegations do not bring Sidaras, Walsh, or O'Connor's conduct to the "investigative" side of the line, at least with respect to the issued accusatory instruments.

---

[14] Indeed, the complaint alleges that Eckert went to the Claywood Property as a result of practices of the Town's Fire Marshal's office, which is not a party to this suit. (SAC, ¶ 101).

Norton does allege that Sidaras directed Eckert to go to the Claywood Property on May 4, 2011 to conduct an investigation into a prior violation on the property. (SAC, ¶ 211). Because this alleged conduct would open a new investigation into the Claywood Property and was not connected to the existing case, it constitutes an "investigative" function. *See Smith v. Garreto*, 147 F.3d 91, 94 (2d Cir. 1998). Thus, Sidaras cannot claim absolute immunity for her alleged instruction to Eckert to investigate the Claywood Property on May 4, 2011.

Whether Sidaras can claim absolute immunity for her alleged instruction to Eckert to obtain a complaint and/or affidavit by Ralph Voehl on May 5, 2011 is a closer question. (SAC, ¶ 212). The Supreme Court "has identified 'evaluating evidence and interviewing witnesses' as falling on the absolute immunity side of the line, leaving 'searching for the clues and corroboration' that might lead to a recommendation for an arrest on the qualified immunity side." *Smith*, 147 F.3d at 94 (quoting *Buckley*, 509 U.S. at 273)). The complaint and/or affidavit sought from Ralph Voehl arguably constitutes "corroboration" of the existing prosecution, as it occurred shortly before the Town filed its opposition to Norton's motion to dismiss Rental Accusatory 2 and Storage Accusatory 2. Because Norton is the non-moving party here, the Court views the alleged facts in his favor and determines that Sidaras also cannot claim absolute immunity with respect to her instruction to Eckert to obtain a complaint and/or affidavit from Ralph Voehl on May 5, 2011.

Norton's malicious prosecution claims are also based on Sidaras, Walsh and O'Connor allegedly "instituting and continuing the Rental Accusatory 2 and Storage Accusatory 2 criminal prosecutions." (SAC, ¶ 246). Defendants correctly argue that such conduct is absolutely immune from suit, as these are clear prosecutorial functions. *See Shmueli*, 424 F.3d at 236–37 (noting the initiation and pursuit of a criminal prosecution are "quintessential prosecutorial

functions") (citing *Imbler*, 424 U.S. at 430); *Ying Jing Gan*, 996 F.2d at 531 (noting prosecutor's decision to initiate a prosecution and performance of litigation-related duties "are given the shield of absolute immunity"). Nor is there any plausible, well-pled contention that in pursuing the prosecution of Norton, Sidaras, Walsh and O'Connor were somehow acting beyond their jurisdiction. *See Shmueli*, 424 F.3d at 237; *Karris v. Varulo*, No. 14–CV–1077, 2014 WL 1414483, at *4 (E.D.N.Y. Apr. 10, 2014) (granting absolute immunity to prosecutor-defendants where plaintiff did not allege the prosecutors undertook their actions "in the complete absence of all jurisdiction").

Thus, O'Connor and Walsh enjoy absolute immunity from Norton's federal claim for malicious prosecution and are dismissed from Count 13. Sidaras enjoys absolute immunity, *except* with respect to her instructions to Eckert on May 4, 2011 and May 5, 2011.[15]

### 2. Norton's Surviving Allegations Against Sidaras, Mistretta and Eckert Do Not Plausibly State A Claim for Malicious Prosecution Under Section 1983 (Count 13)

To plausibly allege a claim under Section 1983 for malicious prosecution, a plaintiff must allege the four elements of a malicious prosecution claim under New York law and a deprivation of a Fourth Amendment liberty interest. *See Manganiello v. City of New York*, 612 F.3d 149, 160–61 (2d Cir. 2010) (citing cases). To state a claim for malicious prosecution under New York law, Norton must adequately allege: (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions. *Id*. at 161 (citing *Murphy v. Lynn*, 118 F.3d 938, 944 (2d Cir. 1997)). To

---

[15] Because the Court dismisses Norton's Section 1983 claim for malicious prosecution for failing to state a claim, the Court need not, and declines to, address whether Sidaras is entitled to qualified immunity.

state a claim under Section 1983, Norton must also allege conduct by these Defendants that resulted in a constitutionally cognizable, post-arraignment deprivation of liberty implicating his Fourth Amendment rights. *See Bernshtein v. City of New York*, 496 F. App'x 140, 142 (2d Cir. 2012) (citing *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000); *Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003) (citing *Singer v. Fulton County Sheriff,* 63 F.3d 110, 116–17 (2d Cir. 1995)).

Because the essence of a malicious prosecution claim is "abuse of the judicial process, a plaintiff pursuing such a claim under Section 1983 must show that the seizure resulted from the initiation or pendency of judicial proceedings." *Murphy*, 118 F.3d at 944. Courts have found a cognizable, post-arraignment deprivation of liberty where the individual was detained, *id.*, or upon the placement of restrictions on the individual's ability to travel, *id.* at 946 (finding that the order that plaintiff not leave the state of New York, coupled with the requirement that he attend court appointments, constituted a seizure). In *Parkash v. Town of Southeast*, No. 10–CV–8098, 2011 WL 5142669 (S.D.N.Y. Sept. 30, 2011), for example, the court held that having to appear in court, in itself, is insufficient to establish a Fourth Amendment seizure for purposes of a malicious prosecution claim. *Id.* at *5–6 (finding plaintiff's 15 court appearances insufficient to establish a deprivation of liberty where plaintiff was not also restricted in his ability to travel); *see Mangino v. Inc. Vill. of Patchogue*, 739 F. Supp. 2d 205, 227–28 (E.D.N.Y. 2010) *reconsidered on other grounds*, 814 F. Supp. 2d 242 (E.D.N.Y. 2011) (finding multiple court appearances pursuant to separate summonses did not establish a Fourth Amendment seizure where plaintiffs were neither arrested, detained or restricted with respect to travel). Failure to adequately allege a post-arraignment deprivation of liberty results in the dismissal of a Section 1983 malicious prosecution claim. *See Parkash*, 2011 WL 5142669 at *10 (dismissing Section

1983 malicious prosecution claim based on plaintiffs' failure to establish sufficient deprivation of liberty).

Here, Norton has failed to allege that Eckert, Sidaras and Mistretta deprived him of a cognizable liberty interest following his arraignment. Norton's allegations regarding the deprivations of liberty he suffered as a result of the Town's prosecution fall far short of the threshold required to establish a seizure under the Fourth Amendment. Court appearances are all that Norton relies upon, as he does not allege that he was detained, arrested, or restricted in his travel by the State Court.[16] Norton made his first appearance in the State Court on February 2, 2011. (SAC, ¶¶ 196, 202, 209). Norton then alleges that after his arraignment, "he was required to return to the State Court before both charges against him were ultimately dismissed." (SAC, ¶ 221). But no dates of appearance following his arraignment are alleged, and Norton does not allege that he was ever detained in any way or ordered by the court not to travel.[17] Norton instead appears to rely on the fees he expended on a lawyer to fight the charges against him, both pre- and post-arraignment, but it is clear that fees for an attorney do not "seize" an individual under the Fourth Amendment.[18]

---

[16]     Though the Second Amended Complaint lists a number of arraignment hearings continued on the second set of accusatory instruments and the issuance of arrest warrants, Norton did not appear at these hearings, and the warrants filed in July 2010 and January 2011 were withdrawn. (SAC, ¶¶ 135, 146, 155, 159, 161, 163, 180, 185, 188, 194). Norton cannot plausibly claim that he was seized by pre-arraignment hearings where he did not even appear.

[17]     At oral argument, Norton suggested that the Town Defendants constructively arrested him through the issuance of the appearance tickets and accusatory instruments, and his eventual appearance in Court. However, a "brief encounter with the authorities" or the issuance of an appearance ticket does not constitute constructive arrest. *See Guendel v. Suffolk County*, No. 06-cv-0513, Memorandum & Order at *7 (Dkt. 45) (E.D.N.Y. Mar. 5, 2008).

[18]     To the extent that Plaintiff alleges a deprivation of liberty based on his submission to a "warrantless search of his person and effects" to enter the State Court (SAC, ¶ 224), Plaintiff's allegations again fall short. It is well-established that this type of administrative search is constitutional under the Fourth Amendment. *See, e.g.*, *Dickerson v. Napolitano*, 604 F.3d 732,

Because Norton's surviving allegations for malicious prosecution under Section 1983 do not establish a cognizable deprivation of liberty, Count 13 is dismissed.[19]

### D.    <u>Monell</u> Liability Against the Town (Count 6)

Count 6 of Norton's complaint alleges *Monell* liability against the Town based on Norton's Section 1983 claim for malicious prosecution and malicious abuse of process.  To state a claim for municipal liability under *Monell*, a plaintiff must plausibly allege "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right."  *Torraco v. Port Authority of New York and New Jersey*, 615 F.3d 129, 140 (2d Cir. 2010) (citing *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007)); *see also Lamont v. City of New York*, No. 12–CV–2478, 2014 WL 4829328, at *7 (E.D.N.Y. Sept. 29, 2014) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690–91, (1978)).  Because both of the claims underlying Count 6 have been dismissed, Norton cannot maintain his claim for *Monell* liability against the Town.  *See Bernshtein*, 496 F. App'x at 144 ("To the extent that Bernshtein cannot establish Brockmann violated her constitutional rights (through false arrest, malicious prosecution, or excessive detention), the City of New York likewise is not liable on the *Monell* claims asserting those violations.").  Count 6 is thus dismissed.

---

751 (2d Cir. 2010) (listing cases upholding screenings of citizens upon entry to government buildings); *Roundtree v. City of New York*, 778 F. Supp. 614, 620 n.1 (E.D.N.Y. 1991) (stating "pat down" search at courthouse was "clearly constitutional as an administrative search to ensure the security of the courthouse").

[19]    The Town Defendants have asserted other bases for dismissing Norton's Section 1983 malicious prosecution claim, but the Court need not, and does not, reach the merits of those defenses here.

E.    **Monell Liability Against the County (Count 7)**

Count 7 of the complaint alleges *Monell* liability against the County based on Norton's Section 1983 claim for malicious prosecution and malicious abuse of process.  For the same reasons that Count 6 is dismissed from the complaint, the Court also dismisses Count 7.

F.    ***Monell* Liability Against the Town Based on Fourth Amendment Violation (Count 4)**

Count 4 of the Second Amended Complaint asserts that the Town is liable for violating Norton's Fourth Amendment rights because Eckert trespassed on his property pursuant to Town practices.  The Town Defendants first seek to dismiss the claim on standing grounds, asserting that Norton lacks standing because he was leasing the Claywood Property to tenants and thus did not possess a reasonable expectation of privacy in the premises.  (Town Def. Memo at ECF 28–29).  Norton alleges that as a property owner, he never relinquished his right to prohibit Town Enforcement Office personnel from entering onto the Claywood Property without a warrant, absent exigent circumstances not present here.  (Pl. Opp. Memo at ECF 61).  Though this is a close question, the Court finds that Norton has plausibly pled his standing to assert a Fourth Amendment claim.  As stated earlier, on a motion for judgment on the pleadings the Court must construe the allegations in Norton's favor as the non-moving party.  (*See* Section II, *supra*.) Here, the Second Amended Complaint does not refer to Norton as a landlord or otherwise allege that he relinquished his expectation of privacy to the property, and it alleges that Eckert searched the property without Norton's consent.  (SAC, ¶¶ 103–04).  Therefore, Norton has plausibly alleged standing to assert a Fourth Amendment claim.[20]

---

[20]    In their memorandum accompanying their motion for judgment on the pleadings, the Town Defendants refer to an affidavit executed by Norton's alleged tenant regarding consent to Eckert's search.  (Town Def. Memo at ECF 28 n.7).  Because Norton has not relied on that

Nonetheless, the Court finds that Norton's Fourth Amendment claim must be dismissed for failure to satisfy the *Iqbal/Twombly* pleading standard.  This claim is based on a *Monell* theory of liability against the Town.  Norton alleges that Eckert's search of the Claywood Property was pursuant to the Town's practices and resulted from the Town's failure to train him.  (SAC, ¶¶ 257–61).  Here, though, Norton has alleged only one instance of trespass, *i.e.*, Eckert's search of the Claywood property, including the interiors of the house and garage, on February 3, 2010.[21]  A claim premised on an official policy or custom cannot be sustained on one alleged violation.  *See Berry v. Village of Millbrook*, 815 F. Supp. 2d 711, 717 (S.D.N.Y. 2011) ("a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the [municipality].") (quoting *Newton v. City of New York*, 566 F. Supp. 2d 256, 271 (S.D.N.Y. 2008)); *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 514 (S.D.N.Y. 2008) *aff'd sub nom.*, *Jean-Laurent v. Wilkerson*, 461 F. App'x 18 (2d Cir. 2012) (dismissing plaintiff's Fourth Amendment claim for municipality liability due to plaintiff's failure to present "evidentiary support for the existence of such a municipal policy, custom or practice").

Norton's Fourth Amendment claim against the Town is thus dismissed.

---

affidavit to frame his complaint, the Court's consideration of that affidavit for purposes of this motion is not proper.  *See* Section II, *supra*.

[21]    Norton's claim asserts another instance of trespass on May 4, 2011 (SAC, ¶ 260), but a review of the Second Amended Complaint shows that the allegations supporting this assertion are limited to Eckert parking his car in the driveway of the Claywood Property.  (SAC, ¶ 211). Assuming Norton does have a reasonable expectation of privacy with respect to the Claywood Property, a parked car in the driveway does not plausibly allege a violation of that expectation. *Schwasnick v. Fields*, No. 08–CV–4759, 2010 WL 2679935, at *4 (E.D.N.Y. June 30, 2010) ("For example, there is no expectation of privacy along a front walkway and driveway.").

## G. Procedural Due Process Violation (Count 5)

Count 5 alleges that the Town violated Norton's right to procedural due process by basing its prosecution on a facially insufficient accusatory instrument. (SAC, ¶¶ 263–85). A procedural due process violation occurs "when the government deprives a person of a protected life, liberty, or property interest without first providing notice and an opportunity to be heard." *B.D. v. DeBuono,* 130 F. Supp. 2d 401, 432–33 (S.D.N.Y. 2000). To determine whether a Section 1983 due process claim is plausibly alleged, the Court evaluates the sufficiency of the allegations with respect to the liberty or property interest alleged and the process due before deprivation of that interest. *See Reed v. Medford Fire Dep't, Inc.*, 806 F. Supp. 2d 594, 609–10 (E.D.N.Y. 2011) (citing *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002)).

The liberty interest that Norton appears to allege is freedom from prosecution from the state based on jurisdictionally defective or facially insufficient informations. (SAC, ¶¶ 263, 285).[22] Norton claims that the appearance tickets and accusatory instruments failed to comply with New York's requirement that "every element of the offense charged . . . be supported by non-hearsay allegations of such information and/or any supporting deposition." N.Y.C.P.L.R. § 100.15(3); *see also* N.Y.C.P.L.R. § 100.40. Norton thus alleges a liberty interest based on state law.

"To establish a liberty interest based on state law, the plaintiff must show that the alleged 'governmental action ... deprived [him] of a right previously held under state law.'" *Chance v. Reed*, 538 F. Supp. 2d 500, 508 (D. Conn. 2008) (quoting *Paul v. Davis*, 424 U.S. 693, 708

---

[22] Norton's Opposition appears to assert a deprivation of this liberty interest based on required court appearances and the expenses of attorneys' fees. (Pl. Opp. Memo at ECF 64). However, as discussed above in Section III.E, such allegations do not adequately plead a constitutionally cognizable deprivation of liberty and so cannot be construed to support his claim for procedural due process. *See* Section III.E, *supra*.

(1976)).  Though state laws may, in some circumstances, create constitutionally protected entitlements to substantive liberty interests, "state statutes do not create federally protected due process entitlements to specific state-mandated procedures."  *Holcomb v. Lykens*, 337 F.3d 217, 224 (2d Cir. 2003) (citing cases).

The Second Circuit has shied away from "elevating a state-mandated procedure to the status of a constitutionally protected liberty" interest pursuant to claims under Section 1983, because doing so "would make process an end in itself rather than a requirement whose constitutional purpose is to protect a *substantive* interest in which the individual has a claim of entitlement."  *Holcomb*, 337 F.3d at 224 (quoting *Sealed v. Sealed*, 332 F.3d 51, 57 n.5 (2d Cir. 2003) (citations omitted)) (emphasis added).  Courts have routinely rejected claims for procedural due process where the alleged liberty interest was premised only on the government actor's compliance with its own procedures, and not also attendant upon a separately articulable substantive right.  *See Brown v. Graham*, 470 F. App'x 11, 13 (2d Cir. 2012) (rejecting procedural due process claim premised on liberty interest in "state's compliance with its own prison grievance procedure"); *Austin v. Fischer*, 453 F. App'x 80, 83 (2d Cir. 2011) (affirming district court's finding that plaintiff's allegations "that defendants violated state regulations during his disciplinary hearing do not give rise to a § 1983 due process claim."); *Romeo v. Aid to the Developmentally Disabled, Inc.*, No. 11–CV–6340, 2013 WL 1209098, at *6 (E.D.N.Y. Mar. 22, 2013) (dismissing procedural due process claim for failure to articulate a cognizable liberty or property interest).

Thus, Norton's claim for procedural due process must fail.  His alleged liberty interest, *i.e.*, freedom from prosecution based on a facially insufficient or jurisdictionally defective instrument, is not cognizable under the federal Due Process Clause because it only seeks the

Town's compliance with state procedures, specifically, N.Y.C.P.L.R. §§ 100.15(3) and 100.40. *See Holcomb*, 337 F.3d at 224. Norton does not allege a separate, constitutionally cognizable substantive liberty or property interest that could potentially sustain his claim. He has not met his burden to show that his claim is premised on a *protected* liberty interest and thus his claim must fail.

Count 5 is, therefore, dismissed.

### H. Attorneys' Fees Under Section 1983 (Count 12)

Having dismissed all of Norton's claims under Section 1983, the Court also dismisses Norton's claim for attorneys' fees under Section 1983. (SAC, ¶ 323).

### I. Declaratory Judgment (Counts 9, 10, and 11)

The dismissal of all counts brought under Section 1983 leaves Norton's remaining federal law counts as claims under the federal Declaratory Judgment Act, 28 U.S.C. § 2201. Count 9 seeks a declaration pursuant to the federal Declaratory Judgment Act that the Town's alleged conduct was the result of established Town practices that violated, and continue to violate, Norton's constitutional rights (SAC, ¶¶ 299–301). Count 10 seeks a declaration against the County on the same basis as Count 9 (SAC, ¶¶ 302–04). Count 11 seeks a declaration that the Town's Rental Code is invalid, that the Town Enforcement Office is without jurisdiction or authority to enforce the Town's zoning ordinance, and that prior and future actions initiated by the Town Enforcement Office are null and void (SAC, ¶¶ 305–22).

The federal Declaratory Judgment Act is "procedural only" and so counts pled under the Act do not independently support subject matter jurisdiction under the federal question doctrine. *See Chevron Corp.*, 667 F.3d at 244–45 (citing *Skelly Oil*, 339 U.S. at 671; *Davis v. United States*, 499 F.3d 590, 594 (6th Cir. 2007)); *Goldberg v. Cablevision Sys. Corp.*, 281 F. Supp. 2d

595, 604 (E.D.N.Y. 2003) ("Because the [Declaratory Judgment] Act does not confer subject matter jurisdiction, the plaintiff must have an independent basis for jurisdiction."). Therefore, Norton cannot rely on Counts 9, 10, and 11 to satisfy federal question jurisdiction. Given the absence of any alternate basis for subject matter jurisdiction,[23] the Court dismisses Counts 9, 10 and 11 without prejudice. *See Goldberg*, 281 F. Supp. 2d at 604 (dismissing remaining claim for declaratory relief after dismissal of other federal claims because court lacked subject matter jurisdiction).

**J.        Remaining State Law Claims (Counts 3 and 7)**

Having dismissed all claims pled under federal law, the Court declines to exercise supplemental jurisdiction over the remaining state law claims.[24] Where, as here, any federal "claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 350 n.7 (1988); *see also Oneida Indian Nation of New York v. Madison Cnty.*, 665 F.3d 408, 437 (2d Cir. 2011) ("we have repeatedly said that 'if a plaintiff's federal claims are dismissed before trial, 'the state law claims should be dismissed as well.'") (quoting *Brzak v. United Nations*, 597 F.3d 107, 113–14 (2d Cir. 2010)); 28 U.S.C. § 1367(c)(3) ("district courts may decline to exercise supplemental jurisdiction over a claim if the district court has dismissed all claims over which it has original jurisdiction"). For those reasons, the Court declines to exercise supplemental jurisdiction over Counts 3 and 7 of the Second Amended

---

[23]        Norton cannot avail himself of diversity jurisdiction because he resides in New York and is of the same citizenship as all Defendants. (SAC, ¶ 4).

[24]        The remaining state law claims are Count 3, which asserts a malicious prosecution claim under New York law (SAC, ¶¶ 244-52), and Count 7, which asserts *respondeat superior* liability based on Count 3 (SAC, ¶¶ 288-89).

Complaint and dismisses them without prejudice to being brought in State court. *See Oneida Indian Nation of New York,* 665 F.3d at 444.

## IV.  CONCLUSION

The Court therefore GRANTS the Town Defendants' motion for judgment on the pleadings and the County Defendant's motion to dismiss with respect to Plaintiff's claims under 42 U.S.C. § 1983.  Counts 1, 4, 5, 6, 8, 12 and 13 are thus DISMISSED *with* prejudice.  Count 2 is voluntarily withdrawn by Plaintiff and is dismissed *without* prejudice.

Lacking independent subject matter jurisdiction over the remaining claims in the complaint, the Court dismisses Counts 9, 10, and 11 *without* prejudice.  Plaintiff's cross-motion for summary judgment is also dismissed.  Finally, the Court declines to exercise supplemental jurisdiction over Counts 3 and 7.  The Court directs the Clerk of the Court to enter judgment accordingly and terminate this case.


SO ORDERED:


*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: March 31, 2015
         Brooklyn, New York