UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
HOWARD J. NORTON,

                            Plaintiff,

                -against-

TOWN OF ISLIP, COUNTY OF SUFFOLK,
ALICIA S. O'CONNOR, ERIN SIDARAS,
PATRICIA A. WAITE, MICHAEL P.
WALSH, DANIEL C. ECKERT, and JASON
MISTRETTA, all individually and in their
official capacities,

                            Defendants.

----------------------------------------------------------x

**ORDER DENYING
RECONSIDERATION**

12 CV 4463 (PKC)

PAMELA K. CHEN, United States District Judge:

      Presently before the Court is Plaintiff's motion for reconsideration of this Court's March 31, 2015 Memorandum and Order (Dkt. 63 ("March 31 Order")) granting Town Defendants' motion for judgment on the pleadings and the County's motion to dismiss Plaintiff's Second Amended Complaint ("SAC"). Based on the parties' submissions and for the reasons stated below, the Court DENIES Plaintiff's motion for reconsideration and request for oral argument. (Dkts. 66, 69.) The Court also DENIES the County's request for permission to seek attorney's fees incurred in connection with opposing this motion. (Dkt. 70.)

## BACKGROUND

      Although the underlying facts and litigation history can be found in the March 31 Order, a brief description of the case's procedural posture follows. Plaintiff Howard J. Norton brought this suit in 2012 against the Town of Islip (the "Town") and various Town attorneys and

investigators ("Individual Town Defendants"),[1] as well as Suffolk County (the "County") (collectively, "Defendants"), stemming from the Town's attempts to prosecute him for violations of the Town's rental and storage codes. Specifically, the Town executed two sets of accusatory instruments in February and September 2010 alleging: (1) that Plaintiff had allowed and maintained the rental of a residential property that he owned (the "Claywood Property") without a rental permit, and (2) that Plaintiff had allowed and maintained storage of an unregistered motor vehicle on that same property. The crux of Plaintiff's 13-count SAC, which asserts several theories of liability under both federal and state law, is that these charges were retaliatory in nature, prompted by Plaintiff's long history of litigation against the Town.

In its March 31 Order, the Court dismissed all of Plaintiff's federal claims, and declined to exercise supplemental jurisdiction over the remaining state claims. Plaintiff seeks reconsideration of the Court's dismissal of two of his federal claims: (1) his federal malicious prosecution claim against several of the Individual Town Defendants (Thirteenth Cause of Action); and (2) his Fourth Amendment *Monell* claim against the Town (Fourth Cause of Action). (Dkt. 66-1 ("Pl. Recon. Mem.") at ECF 4-8.) Plaintiff further argues that if the Court grants reconsideration and revisits the merits of the Town's other defenses, the Court should reconsider certain factual findings it made in its order. (*Id.* at ECF 8-13.) Finally, Plaintiff argues that if any of his claims are reinstated on reconsideration, the Court should reinstate his motion for summary judgment seeking to declare the Town's rental permit law in violation of the

---

[1] Three of these individuals are attorneys with the Town Attorney's Office: Town Attorney Alicia S. O'Connor, Deputy Town Attorney Erin Sidaras, and Assistant Town Attorney Michael P. Walsh. The other two are investigators with the Division of Code Enforcement of the Town's Public Safety Department: Daniel C. Eckert and his supervisor Jason Mistretta. Plaintiff previously agreed to dismiss all claims against a sixth individual, Assistant Town Attorney Patricia A. Waite. (March 31 Order at ECF 15.) Citations to "ECF" refer to the pagination generated by the Court's electronic docketing system and not the documents internal pagination.

New York State Constitution. (*Id.* at ECF 13.) The Town Defendants (the Town, O'Connor, Sidaras, Walsh, Eckert, and Mistretta) oppose Plaintiff's motion. The County also opposes Plaintiff's motion and seeks permission to request attorney's fees for the time it expended in replying to Plaintiff's motion should the Court deny reconsideration.

The Court denies Plaintiff's motion for reconsideration in full. Even construing the allegations relating to Plaintiff's federal malicious prosecution and Fourth Amendment *Monell* claims in the way Plaintiff urges on reconsideration, the Court does not reach a different conclusion than in its March 31 Order. The Court still concludes that these two federal claims should be dismissed. Because it declines to reinstate either claim, the Court need not revisit its decision to decline supplemental jurisdiction over Plaintiff's state law claims. Finally, the Court denies the County's request for permission to seek attorney's fees.

## DISCUSSION

### I. Standard for Reconsideration

The grounds for reconsideration are an "'intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)). "The standard for granting [a reconsideration motion] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (citations omitted). "It is well-settled that [a motion for reconsideration] is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*,

3

684 F.3d 36, 52 (2d Cir.), *as amended* (July 13, 2012) (quotations and citation omitted). Furthermore, arguments raised for the first time on reconsideration are not proper grounds for reconsideration. *See Image Processing Techs., LLC v. Canon Inc.*, No. 10-cv-3867, 2012 WL 253097, at *1 (E.D.N.Y. Jan. 26, 2012) ("[A] party is not permitted to 'advance new facts, issues or arguments not previously presented to the Court' on a motion for reconsideration.") (citing *Caribbean Trading & Fid. Corp. v. Nigerian Nat'l Petroleum Corp.*, 948 F.2d 111, 115 (2d Cir. 1991)).

## II. Analysis

### a. Federal Malicious Prosecution Claim (Thirteenth Cause of Action)

Plaintiff first seeks to revive his federal malicious prosecution claim under 42 U.S.C. § 1983 ("Section 1983"). To state a Section 1983 claim for malicious prosecution, a plaintiff must allege the four elements of a state malicious prosecution tort action[2] and additionally allege a "post-arraignment deprivation of liberty that rises to the level of a constitutional violation" under the Fourth Amendment. *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 117 (2d Cir. 1995).

In its March 31 Order, the Court dismissed Plaintiff's federal malicious prosecution claim against Town Attorney O'Connor and Assistant Town Attorney Walsh on absolute immunity grounds. (March 31 Order at ECF 28-30.) Plaintiff does not seek reconsideration of the dismissal of this claim as to these two Defendants. The Court separately dismissed the federal malicious prosecution claim against Deputy Town Attorney Sidaras and Town Investigators Eckert and Mistretta on the ground that Plaintiff had not adequately alleged a post-arraignment

---

[2] The four elements of a malicious prosecution claim under state law are as follows: "(1) the defendant initiated a prosecution against plaintiff; (2) without probable cause to believe the proceeding can succeed; (3) the proceeding was begun with malice; and (4) the matter terminated in plaintiff's favor." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997).

deprivation of liberty. (March 31 Order at ECF 30-33.) It is this holding that Plaintiff challenges on reconsideration.

### 1. Deputy Town Attorney Sidaras Is Entitled To Absolute Immunity As To Plaintiff's Malicious Prosecution Claim

As an initial matter, though not raised by either party on reconsideration, the Court finds that Deputy Town Attorney Sidaras is also entitled to absolute immunity on Plaintiff's malicious prosecution claim. *See Rehberg v. Paulk,* 132 S. Ct. 1497, 1504 (2012) (prosecutors are absolutely immune from claims for malicious prosecution); *Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995) ("With respect to . . . malicious prosecution, it has long been settled that prosecutors are entitled to immunity from § 1983 liability for initiating a prosecution"). In its March 31 Order, the Court noted that Sidaras enjoyed absolute immunity "*except* with respect to her instructions to Eckert on May 4, 2011 [to investigate the Claywood Property] and May 5, 2011 [to obtain a signed affidavit or complaint from a suspected tenant on the Claywood Property]." (March 31 Order at ECF 30.) Plaintiff's claim of malicious prosecution, however, is not grounded in either of these alleged actions by Sidaras, but in the decision to initiate criminal proceedings against Plaintiff. For this decision, Sidaras is absolutely immune. Accordingly, as with O'Connor and Walsh, the Court dismisses the malicious prosecution claim as to Sidaras.

### 2. Plaintiff Has Failed To Allege Facts That Town Investigator Mistretta Was Personally Involved In The Decision To Charge Plaintiff

The Court similarly finds at the outset that Plaintiff has failed to allege non-conclusory facts that Mistretta was personally involved in the prosecution against Plaintiff, and concludes that dismissal of Mistretta from the federal malicious prosecution claim is therefore appropriate. As the Court previously noted in dismissing Plaintiff's First Amendment claim against Mistretta, Plaintiff alleges simply that Mistretta was present at a meeting on Plaintiff's criminal matters

with other Town Defendants, knew that Plaintiff was one of three owners of the Claywood Property, "advised and instructed" Eckert to issue the second set of appearance tickets, and "knew or recklessly disregarded" the jurisdictional insufficiency of the accusatory instruments. (March 31 Order at ECF 20.) The Court's previous ruling in the First Amendment claim context that "such conclusory allegations hardly establish Mistretta's personal involvement" in issuing the appearance tickets or accusatory instruments is equally applicable here. (*Id*.)

### 3. On Reconsideration, The Court Finds That Plaintiff Has Adequately Pled A "Deprivation of Liberty"

As to the remaining Defendant, Eckert, the Court previously dismissed Plaintiff's federal malicious prosecution claim for failure to adequately plead a deprivation of liberty. The Court noted that Plaintiff failed to allege that he was, in fact, ever required to appear in court on any date following his arraignment. (March 31 Order at ECF 32.) The Court further noted that Plaintiff failed to allege that he was ever detained, arrested, or otherwise restricted in his travel. (*Id.*) In his motion for reconsideration, Plaintiff argues that the Court overlooked a post-arraignment appearance in State Court alleged in the SAC, and that the Court failed to follow the Second Circuit's decision in *Swartz v. Insogna*, 704 F.3d 105 (2d Cir. 2013). (Pl. Recon Mem. at ECF 4-7 (citing SAC ¶ 224).) The Court agrees.

Plaintiff contends that the SAC alleges at least one post-arraignment court appearance in the following paragraph: "When Plaintiff appeared, as required at the State Court for his arraignments *and also on June 8, 2011*, Plaintiff was required to pass through a walk through detector and to submit to a warrantless search of his person and effects . . ." (SAC ¶ 224 (emphasis added).) Although the awkward wording of SAC ¶ 224 could be construed—as Defendants urge—to mean that Plaintiff was not *required* to appear at the State Court on June 8,

2011 but did so anyway, the Court will construe SAC ¶ 224 in Plaintiff's favor at this stage to allege that he was required to appear in State Court on that date.

The Court next turns to the question of whether one post-arraignment court appearance satisfies the "deprivation of liberty" element of a Section 1983 malicious prosecution claim. The relevant line of Second Circuit cases consists of *Murphy v. Lynn*, 118 F.3d 938 (2d Cir. 1997); *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208 (2d Cir. 2000); and *Swartz v. Insogna*, 704 F.3d 105 (2d Cir. 2013). In *Murphy*, the Second Circuit held that a criminal defendant suffers a Fourth Amendment seizure when he is subject to pre-trial release conditions mandating both that: (1) he not leave the state pending resolution of the criminal charges against him, and (2) he return to court whenever his attendance is required. *Murphy*, 118 F.3d at 946. The opinion did not make clear whether one of the conditions is sufficient or whether both are required. Three years later in *Rohman*, however, the Second Circuit recognized that under New York Criminal Procedure Law § 510.40(2) ("Section 510.40"),[3] a criminal defendant released on his own recognizance is necessarily subject to both conditions because he "must render himself at all times amenable to the orders and processes of the court" and "therefore must ordinarily remain in the state."[4] *Rohman*, 215 F.3d at 216 (quotations omitted). The *Rohman* court concluded that

---

[3] Section 510.40(2) provides: "Upon ordering that a principal be released on his own recognizance, the court must direct him to appear in the criminal action or proceeding involved whenever his attendance may be required and to render himself at all times amenable to the orders and processes of the court." The statute does not distinguish between the degree of offense. *See Swartz*, 704 F.3d at 112 (applying Section 510.40(2) to a violation-level offense of disorderly conduct).

[4] In so holding, the *Rohman* court appeared to confirm the implication articulated by Judge Jacobs in *Murphy*: "Under the majority's analysis, every defendant in a criminal case will be deemed to be seized: at one end of the continuum, a defendant will be in jail, and thus be seized in fact; at the other end, a defendant will be released on recognizance (like Murphy) and be deemed seized anyway by reason of the incidental travel restriction and the obligation to appear in court. (It is undisputed that in New York no person against whom a criminal charge is

the operation of Section 510.40, along with the plaintiff's allegation that he was required to appear in court on at least five occasions before the charges were ultimately dropped, satisfied the deprivation of liberty element of a malicious prosecution claim at the pleading stage. *Id.*

Most recently, in *Swartz*, the Second Circuit found the deprivation of liberty element of a malicious prosecution claim sufficiently alleged where an individual charged with a violation-level offense of disorderly conduct was required to appear in court on three occasions following his arraignment. The *Swartz* court stated: "We have consistently held that a post-arraignment defendant who is 'obligated to appear in court in connection with [criminal] charges whenever his attendance [i]s required' suffers a Fourth Amendment deprivation of liberty." *Swartz*, 704 F.3d at 112 (citing *Murphy*, 118 F.3d at 947; *Jocks v. Tavernier*, 316 F.3d 128, 136 (2d Cir. 2003); *Rohman*, 215 F.3d at 215-16). It elaborated: "When [defendant officer] swore out a complaint against [plaintiff] and filed it in a criminal court, he . . . put in motion proceedings that rendered the defendant at all times subject to the orders of the court, *see* § 510.40(2) . . . ." *Id.* This Court finds that what the Second Circuit found most salient in *Rohman* and *Swartz* was the applicability of Section 510.40—*i.e.*, the obligation to return to court whenever an appearance is requested, with its attendant travel restrictions—and not the number of post-arraignment court appearances required of the criminal defendant.

Here, Plaintiff alleges that he was arraigned on February 2, 2011 and that the charges against him were dismissed on June 9, 2011. (SAC ¶¶ 209, 215-17.) Plaintiff alleges that he was subject to Section 510.40 while the criminal charges were pending against him during this time, requiring him to "render himself at all times amenable to the orders and processes of the court." (SAC ¶ 223.) Plaintiff further notes that this requirement "ordinarily requir[es] that the

---

pending may leave the state without the prior permission of the court.)." *Murphy*, 118 F.3d at 953 (Jacobs, J. dissenting)

defendant remain within the state." (Pl. Recon Mem. at ECF 5 (citing *Rohman*, 215 F.3d at 216).) Finally, as the Court found above, Plaintiff alleges that he was required to make at least one post-arraignment court appearance on June 8, 2011. (SAC ¶ 224.) The Court finds that under *Rohman* and *Swartz*, these allegations are sufficient to allege a deprivation of liberty at the 12(b)(6) stage.[5] Though the Court is bound by Second Circuit law in holding that Plaintiff has alleged a sufficient deprivation of liberty, it notes that the Second Circuit's approach is a minority one[6] that effectively federalizes virtually all malicious prosecution claims.[7]

---

[5] The Court declines to opine on whether the deprivation of liberty element is satisfied when *no* post-arraignment court appearances are alleged at all. A few courts in this Circuit suggest that it is and that the mere application of Section 510.40 or a court direction to appear is enough to establish this element. *See Rafter v. Bank of Am.*, No. 04-cv-3341, 2009 WL 691929, at *6 (S.D.N.Y. Mar. 12, 2009) ("The post-arraignment restraint on Rafter's liberty, *occasioned by the court's directive* to Rafter that she appear in court for another proceeding, on a subsequent date, implicates the Fourth Amendment.") (emphasis added) (citing *Rohman*, 215 F.3d at 216 and *Genia v. New York State Troopers,* No. 03-cv-0870, 2007 WL 869594, at *15 (E.D.N.Y. Mar. 20, 2007)), *subsequently aff'd sub nom.*, *Rafter v. Fleet Boston Fin. Corp.*, 523 Fed. App'x 79 (2d Cir. 2013); *Levy v. City of New York*, 935 F. Supp. 2d 575, 589 (E.D.N.Y. 2013) (allegation that plaintiff was released on his own recognizance "raises a triable issue as to whether Plaintiff suffered a post-arraignment deprivation of liberty"); *Davis v. City of New York,* 373 F. Supp. 2d 322, 336 (S.D.N.Y. 2005) (same) (citing *Rohman*, 215 F.3d at 215-16). The Court notes, however, that *Swartz* itself involved three required post-arraignment court appearances over the course of several years, while *Murphy* and *Rohman* involved eight and five required court appearances, respectively. *See also Rohman*, 215 F.3d at 216 (suggesting that plaintiff's alleged limitations on his liberty must "go beyond the fact of the arraignment itself").

[6] Numerous other Circuits have held that Section 1983 malicious prosecution claims are not cognizable where, as here, a party premises the deprivation of liberty element on standard conditions of pre-trial release. *See Becker v. Kroll*, 494 F.3d 904, 915–16 (10th Cir. 2007) (declining to recognize a Fourth Amendment malicious prosecution claim where a plaintiff has not been arrested or incarcerated); *DiBella v. Borough of Beachwood*, 407 F.3d 599, 603 (3d Cir. 2005) (finding no seizure in the absence of "onerous . . . pretrial, non-custodial restrictions," where plaintiff was not arrested, not required to post bail, not required to report to pretrial services, and remained free to travel); *Kingsland v. City of Miami,* 382 F.3d 1220, 1235–36 (11th Cir. 2004) (finding no "significant deprivation of liberty" in the malicious prosecution context where plaintiff alleged she was required to post a $1000 bond, appear at her arraignment, and travel twice from New Jersey to Florida to defend herself in court); *Karam v. City of Burbank,* 352 F.3d 1188, 1193–94 (9th Cir. 2003) (finding that pretrial release conditions obligating plaintiff to obtain court's permission before leaving the state and compelling her

### 4. Eckert Had Probable Cause To Initiate Prosecution Against Plaintiff

While the Court now finds that Plaintiff has adequately pled a deprivation of liberty, the Court nevertheless concludes that Plaintiff's malicious prosecution claim fails for the same reason his First Amendment retaliation claim failed: Plaintiff fails to allege facts showing that Eckert lacked probable cause to charge Plaintiff with violations of Town Code §§ 68-650a or 68-420. *See Manganiello v. City of New York,* 612 F.3d 149, 161–62 (2d Cir. 2010) ("[T]he existence of probable cause is a complete defense to a claim of malicious prosecution in New York."). As the Court explains below, the probable cause analysis in the malicious prosecution context is identical to the analysis the Court previously engaged in when dismissing Plaintiff's First Amendment retaliation claim. Because Plaintiff has presented no valid reason to disturb the Court's previous conclusion that Eckert had probable cause to issue both sets of accusatory instruments, the Court concludes that Plaintiff's malicious prosecution claim is also barred.

Although the Court previously referred to the probable cause inquiry in the malicious prosecution context as a "heightened" one, (March 31 Order at ECF 22 n.9), it notes on reconsideration that this descriptor was inadvertently misleading. The Court now clarifies that the probable cause standard for prosecution is "heightened" only in the sense that it focuses on

---

appearance in court amounted to *de minimis* restrictions not rising to the level of a Fourth Amendment seizure); *Nieves v. McSweeney,* 241 F.3d 46, 56-57 (1st Cir. 2001) (declining to find a seizure based on compelled presence at numerous pre-trial court appearances and at trial, given "the relatively benign nature of the pretrial release conditions involved in this case," which did not involve the posting of a bond, travel restrictions, or post-arraignment detention).

[7] *See Murphy*, 118 F.3d at 953 (Jacobs, J. dissenting) ("Under the majority's analysis, every defendant in a criminal case will be deemed to be seized . . . ."). Other Circuits have rejected a liberal reading of the deprivation of liberty element for this very reason. *See, e.g.*, *Harrington v. City of Nashua*, 610 F.3d 24, 33 (1st Cir. 2010) (noting that if the "inevitable concomitants of the pendency of criminal charges" could constitute a seizure, then "nearly every malicious prosecution claim could be brought before a federal court under the aegis of section 1983"); *Ray v. City of Chicago*, 629 F.3d 660, 664 (7th Cir. 2011) ("Federal courts are rarely the appropriate forum for malicious prosecution claims.").

facts and circumstances available to an officer at a later point in time and in the context of a different decision. Whereas probable cause to arrest considers an officer's belief that "the person to be arrested has committed or is committing a crime" in light of the facts and circumstances available to him *at the time of arrest*, probable cause to prosecute considers an officer's belief that "he has lawful grounds for prosecuting the defendant in the manner complained of" in light of the facts and circumstances available to him *at the time he initiates the prosecution*.[8] *Compare Simpson v. City of New York*, 793 F.3d 259, 265 (2d Cir. 2015) (false arrest standard), *with Bernshtein v. City of New York*, 496 Fed. App'x 140, 142 (2d Cir. 2012) (malicious prosecution standard) (summary order) (citing *Rounseville v. Zani*, 13 F.3d 625, 629 (2d Cir. 1994)). In the instant case, the conduct challenged in both Plaintiff's First Amendment retaliation claim and his malicious prosecution claim is the same: Eckert's swearing out and filing of the second set of accusatory instruments. (SAC ¶¶ 230-31, 245.) Accordingly, the probable cause inquiry for both is also the same: whether Eckert believed he had "lawful grounds for prosecuting" Plaintiff at the time he swore out those documents.[9] *See Bernshtein*, 496 Fed.

---

[8] Notably, courts in this Circuit have recognized that once probable cause is established for an arrest, it does not dissipate unless the "groundless nature of the charges [are] made apparent by the discovery of some intervening fact." *Lowth v. Town of Cheektowaga,* 82 F.3d 563, 571 (2d Cir. 1996); *see also Thomas v. City of New York*, 562 Fed. App'x 58, 60 (2d Cir. 2014) ("While the probable cause inquiries for false arrest and malicious prosecution are distinct, where . . . probable cause to arrest existed and the plaintiff concedes that defendants did not learn of any intervening facts between arrest and initiation of prosecution, claims of malicious prosecution cannot survive.") (summary order).

[9] The probable cause inquiry has also been framed alternately as whether there is a justified belief "that [plaintiff] could be successfully prosecuted," *Posr v. Court Officer Shield No. 207,* 180 F.3d 409, 417 (2d Cir. 1999), or whether there exist "such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003). However, the Second Circuit has stated that it considers these two formulations interchangeable. *See id.* n.7.

App'x at 142 (citation omitted). The Court addressed precisely this question in its March 31 Order, and there is no separate "heightened" probable cause inquiry to go through now.

Plaintiff offers no intervening change of controlling law, new evidence, or clear error warranting reconsideration of the Court's previous ruling that probable cause existed as to both sets of accusatory instruments. *See Kolel Beth*, 729 F.3d at 104. Rather, Plaintiff rehashes old arguments and points to facts that the Court has already addressed and considered at length. Thus, for instance, the Court has already addressed Plaintiff's argument that Eckert's reference to "3:10 p.m." in the accusatory instruments represents the exact time of the alleged rental permit violation. (*Compare* Pl. Recon. Mem. at ECF 9-10, *with* March 31 Order at ECF 24.) It has addressed Plaintiff's factual allegations suggesting that someone other than Plaintiff had control over the unregistered vehicle on the Claywood Property. (*Compare* Pl. Recon. Mem. at ECF 10-11, *with* March 31 Order at ECF 27 n.13.) And it has addressed Plaintiff's argument that Eckert failed to specify the absence of a registration sticker in his accusatory instruments. (*Compare* Pl. Recon. Mem. at ECF 11, *with* March 31 Order at ECF 26.) These arguments are not appropriate grounds for reconsideration and will not be entertained again.

Finally, though the Court concludes that probable cause supported the filing of both sets of accusatory instruments, the Court additionally finds that even if that were not the case, Eckert would still be entitled to qualified immunity because "it was not manifestly unreasonable for [the defendant officer] to charge [the plaintiff]." *Arrington v. City of New York*, No. 15-cv-00170, 2015 WL 5998719, at *2 (2d Cir. Oct. 15, 2015) (quoting *Lowth*, 82 F.3d at 572); *see also id.* at *1 n.3 (qualified immunity may be resolved on a Rule 12(b)(6) motion to dismiss where based on facts alleged in the complaint). The Court finds that it was not "manifestly unreasonable" for Eckert to charge Plaintiff for a violation of an ordinance prohibiting any owner of a dwelling unit

from renting the unit without first obtaining a valid rental permit, where: (1) an individual apparently occupying the premises told Eckert that he had been renting the entire house from Plaintiff since July 2006 for $1525.00 a month, and (2) Eckert separately determined that no rental permit had been issued for the Claywood Property. (*See* SAC ¶ 122.) Nor does the Court find it "manifestly unreasonable" for Eckert to charge Plaintiff under an ordinance providing that the "outdoor storage of unregistered vehicles . . . is prohibited" where: (1) Eckert observed the same unregistered GMC pick-up truck on the Claywood Property driveway on three separate occasions over a span of 17 days, and (2) Plaintiff was an undisputed owner of record of the Claywood Property and, moreover, identified by the suspected tenant, Ralph Voehl, as the owner from whom he rented. (*See* SAC ¶¶ 122, 123; *see also* March 31 Order at ECF 27 n.13.)

For all of the foregoing reasons, the Court finds that Plaintiff's federal malicious prosecution claim was properly dismissed.

### b. Fourth Amendment *Monell* Claim (Fourth Cause of Action)

Plaintiff also requests reconsideration of the Court's dismissal of his Fourth Amendment *Monell* claim, which seeks to hold the Town liable for Eckert's alleged trespasses on the Claywood Property in conducting his investigation. To make out a Section 1983 claim against a municipality, Plaintiff must allege that his injury was caused by an official custom or policy. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978); *see also Roe v. City of Waterbury*, 542 F.3d 31, 37 (2d Cir. 2008) (a plaintiff must demonstrate that the municipality was the "moving force" behind the alleged injury). "[T]he mere assertion that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." *Zherka v. City of New York*, 459 Fed. App'x 10, 12 (2d Cir. 2012) (quotation and citation omitted).

In dismissing Plaintiff's Fourth Amendment claim, the Court found that Plaintiff failed to satisfy the *Iqbal/Twombly* pleading standard with respect to the existence of an official custom or policy. Specifically, it found that Plaintiff's reference to one instance of trespass—Eckert's search of Plaintiff's Claywood property on February 3, 2010—failed to support an inference that the Town had a custom or policy of instructing investigators to trespass on private property and/or failed to train or supervise investigators in that regard. (March 31 Order at ECF 35 ("A claim premised on an official policy or custom cannot be sustained on one alleged violation.")). At the time, the Court noted that Plaintiff asserted a second instance of trespass by Eckert on the Claywood Property on May 4, 2011; however, it construed that allegation to be limited to Eckert parking his car in the driveway of the Claywood Property. (March 31 Order at ECF 35 n. 21 (examining SAC, ¶¶ 211, 260).) The Court reasoned that a parked car in the driveway does not constitute a violation of an expectation of privacy, and therefore, that Plaintiff had not plausibly alleged a second instance of a Fourth Amendment violation. (*Id.*)

On reconsideration, Plaintiff argues that the Court should have construed SAC ¶¶ 211 and 260 to allege a second trespass in violation of the Fourth Amendment. Taking the two alleged instances of trespass together, Plaintiff argues, the SAC alleges sufficient facts to withstand a motion to dismiss. The Court first addresses whether SAC ¶¶ 211 and 260 may be construed as alleging a second instance of trespass on May 4, 2011 before turning to the question of whether two incidents of trespass are sufficient to allege a *Monell* claim against the Town.

### 1. On Reconsideration, The Court Finds That Plaintiff Has Alleged A Second Instance of Trespass

Plaintiff argues that the Court misconstrued the SAC by not finding that it alleges a second search of the Claywood Property by Eckert on May 4, 2011. Plaintiff points to the text of both SAC ¶¶ 211 and 260:

> 211. On May 4, 2011, Eckert was found on Plaintiff's Claywood Property with his vehicle parked in the driveway of the Claywood Property. Eckert purported to be conducting an investigation into a prior violation on the Claywood Property. Upon information and belief, the Town Attorney's Office through Sidaras instructed Eckert to undertake this investigation.
>
> 260. Pursuant to Town Practices, Eckert, on May 4, 2011 trespassed upon the Claywood Property, examined the house and elsewhere within the Claywood Property in a search for possible violations of local law concerning the Claywood Property.

Upon reconsideration, in light of the liberal pleading standard and Plaintiff's status as the non-moving party, the Court finds it proper to construe SAC ¶ 260 as alleging another instance of trespass on May 4, 2011, in that it could plausibly be inferred that after parking his vehicle in the Claywood Property driveway, Eckert exited the vehicle and thereby trespassed on the property. The Court therefore finds that Plaintiff has plausibly alleged more than one incident of trespass.

### 2. Two Instances Of Trespass, Unique to Plaintiff, Do Not Support An Inference That The Town Had A Custom Or Policy Of Such Trespass

There is no "magic number" of instances of unconstitutional conduct that will suffice to permit the inference of a broader municipal policy or custom. As the Court previously noted, it is well-established in this Circuit that a single isolated incident, without more, is not enough.[10] (March 31 Order at ECF 35 (citing cases).) But it does not follow that two, three, or even four incidents will support such an inference. *See, e.g.*, *Bowles v. N.Y.C. Transit Auth.,* 2006 WL 1418602, at *16 n.31 (S.D.N.Y. May 23, 2006) (finding that "the combined evidence of only two incidents would still be insufficient to show a 'custom or usage' under the *Monell* standard"); *Giaccio v. City of New York*, 308 Fed. App'x 470, 471-72 (2d Cir. 2009) (dismissing *Monell* claim where plaintiff "identifie[d], at most, only four examples where the defendants might have

---

[10] *But see infra* at 17-18 (discussing the "final policymaker" theory of municipal liability, in which a single action undertaken by a final policymaker *can* be enough to impose *Monell* liability).

15

disclosed [plaintiff's] positive drug test results," the injury complained of). Rather, the inquiry is a holistic one.

Here, Plaintiff alleges two occasions on which the same investigator, Eckert, trespassed on Plaintiff's Claywood Property, in connection with the same investigation. The Court notes that Plaintiff has only alleged two incidents that are entirely unique to him. As one court has noted, "one man's experience does not make a policy." *Laurin v. New Rochelle Police Officers*, 373 F. Supp. 2d 385, 401 (S.D.N.Y. 2005), *aff'd in part, vacated on other grounds*, 2007 WL 247728 (2d Cir. Jan. 25, 2007); *see also Prince v. County of Nassau*, 837 F. Supp. 2d 71, 104 (E.D.N.Y. 2011), *aff'd*, 563 Fed. App'x 13 (2d Cir. 2014) (dismissing *Monell* claim where plaintiff proffered evidence only as to purported harassment that occurred with respect to *his* bars, but not with any other bars or restaurants within the relevant area).

The SAC does not allege, for instance, that anyone other than Plaintiff has been subjected to unconstitutional searches of their properties by Town Enforcement Office Investigators. *Cf. Osterhoudt v. City of New York*, No. 10-cv-3173, 2012 WL 4481927, at *1 (E.D.N.Y. Sept. 27, 2012) (finding that the plaintiff stated a plausible claim of municipal liability where he "cites a number of complaints alleging that the NYPD conducted mass arrests at demonstrations and in crowd control situations, plausibly alleging a widespread departmental policy of arresting political demonstrators without determining probable cause on an individual basis"); *Castilla v. City of New York*, No. 09-cv-5446, 2012 WL 3871517, at *5 (S.D.N.Y. Sept. 6, 2012) (finding plaintiff stated a plausible claim of municipal liability where she "allege[d] various other instances of male police officers taking sexual advantage of females under their custody or control"). Nor does the SAC allege that any investigators other than Eckert trespassed on private

property.  In short, the SAC fails to allege any facts that would tend to support an inference that there was a broader Town policy or custom of trespass at play.

### 3. Plaintiff Does Not Allege That Sidaras Was A "Final Policymaker"

Finally, the Court notes that a municipality may be held liable for "even a single action" of an official, where that official "possesses final authority to establish municipal policy with respect to the action ordered." *Amnesty Am. v. Town of W. Hartford,* 361 F.3d 113, 126 (2d Cir. 2004).  Although Plaintiff does not raise this theory of municipal liability on reconsideration, the Court will nevertheless address it now, in light of Plaintiff's allegation "upon information and belief" that investigator Eckert committed his second instance of trespass at the direction of Deputy Town Attorney Sidaras, whom Plaintiff alleges is a "policymaker."[11]  (SAC ¶¶ 8, 211.)

The Court finds that this theory of municipal liability, too, fails.  Although the SAC alleges that Sidaras is a "policymaker," it nowhere alleges that Sidaras is a *final* policymaker with respect to town investigators' searches of private premises for local law violations.  *See Pembaur v. Cincinnati,* 475 U.S. 469, 481-82 (1986) ("[T]he fact that a particular official—*even a policymaking official*—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion.") (emphasis added); *Wood v. Town of E. Hampton*, No. 08-cv-4197, 2010 WL 3924847, at *25 (E.D.N.Y. Sept. 30, 2010) (dismissing *Monell* claim because the complaint did not allege that any of the individual Village Defendants have "final policymaking authority," and "Plaintiff's mere assertions that the individual Village Defendants are 'policymakers' is not sufficient for liability to attach to the Village under *Monell*").

---

[11] The Court did not previously need to address this theory of municipal liability because Plaintiff does not allege that Eckert was acting at the direction of another in the first instance of trespass.  *See* SAC ¶ 101 (attributing his trespass to the fire marshal's office).

Nor does Plaintiff allege any facts from which final policymaking authority could be inferred. Plaintiff does not allege facts suggesting that the Town Attorney's Office is involved in setting policy governing inspections of private property for Town Code violations, let alone that Sidaras had the final say on such policy. Indeed, even if the Town Attorney's Office *did* oversee such policy, Plaintiff's own allegations indicate that Sidaras is subordinate to Town Attorney Alicia O'Connor. *See* SAC ¶ 7 (referring to *O'Connor* as "the chief policy maker of the Town Attorney's Office"); *see also Feerick v. Sudolnik*, 816 F. Supp. 879, 886–87 (S.D.N.Y. 1993), *aff'd,* 2 F.3d 403 (2d Cir. 1993) (dismissing the plaintiff's claims against the *assistant* district attorneys on the basis that they were not final policymakers because they were subordinates to the county district attorney).

The Court finds that the SAC fails to set forth any facts that would support an inference that the Town had a policy or custom of instructing investigators to trespass on private property or that a final policymaker directly committed a Fourth Amendment violation. Accordingly, the Court declines to reinstate Plaintiff's Fourth Amendment *Monell* claim against the Town.

   c. **State Law Claims**

Because the Court declines to reinstate Plaintiff's federal malicious prosecution and Fourth Amendment *Monell* claims, the Court need not consider Plaintiff's request to revisit any previous factual findings or to address his summary judgment motion seeking to declare the Town's rental permit law in violation of the New York State Constitution.[12] As to all claims not discussed in this opinion, the Court adheres to the reasoning set forth in the March 31 Order.

---

[12] Even if the Court reinstated any of Plaintiff's federal claims, it would likely not reinstate Plaintiff's New York State constitutional challenge, heeding the Second Circuit's caution that federal courts should avoid deciding novel issues of state law. *See Carver v. Nassau Cty. Interim Fin. Auth.*, 730 F.3d 150, 154-55 (2d Cir. 2013) ("Where a pendent state claim turns on novel or unresolved questions of state law, especially where those questions concern the state's interest in the administration of its government, principles of federalism and comity may

### d. County's Request for Reasonable Attorney's Fees

The Court denies the County's request for leave to move for reasonable attorney's fees incurred in the defense of this motion. Attorney's fees will only be awarded if the plaintiff's underlying "claim was frivolous, unreasonable, or groundless, or . . . the plaintiff continued to litigate after it clearly became so." *Opoku v. County of Suffolk*, No. 14-cv-2726, 2015 WL 5010101, at *4 (E.D.N.Y. Aug. 21, 2015) (quoting *Rounseville,* 13 F.3d at 632 (2d Cir. 1994)). Although the Court denies Plaintiff's motion for reconsideration in its entirety, it finds that Plaintiff had a colorable basis in law and fact for his motion, such that an award of attorney's fees is unwarranted.

### CONCLUSION

For the reasons stated herein, Plaintiff's motion for reconsideration is denied in its entirety, and the County's request for attorney's fees is denied.

SO ORDERED:

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: January 21, 2016
      Brooklyn, New York

---

dictate that these questions be left for decision by the state courts.") (quoting *Seabrook v. Jacobson*, 153 F.3d 70, 72 (2d Cir. 1998)).